OPINION
{¶ 1} Defendant-appellant Solomon Mitchell appeals from his conviction and sentence for Aggravated Burglary, Aggravated Robbery and Kidnapping. He contends that the trial court erred in failing to suppress identification testimony, and that it erred in sentencing. He also claims that his convictions are against the manifest weight of the evidence.
 {¶ 2} We conclude that Mitchell's convictions are not against the manifest weight of the evidence. We further conclude that the trial court did not err in denying Mitchell's suppression motion, because the eyewitness identifications were not unduly suggestive or unreliable. Finally, we find merit in Mitchell's claim that the trial court did not adequately state its reason for imposing consecutive sentences.
 {¶ 3} Mitchell's sentence is Reversed, his conviction is Affirmed in all other respects, and this cause is remanded for re-sentencing.
 I {¶ 4} On April 4, 2004, Jennifer Jennings and her seven-year old daughter were in their home. Jennings was lying on her bed watching television, and her daughter was sleeping beside her. At some point Jennings heard the sound of breaking glass in the living room. She immediately arose and went to her closet to get her handgun. However, before, she could get the gun, a man pointed a gun at her face.
 {¶ 5} The man was wearing a dark sweatshirt with a hood pulled up over his head. He was covering his mouth and nose with his hand. The man threatened to kill Jennings and her daughter. Jennings gave the man forty-two dollars from her pants. She also emptied her jewelry box, but the man did not take any of her jewelry. The man then forced Jennings to drive him to a bank, where he made her withdraw $300 from an ATM. Jennings and the man then returned to her house, where he proceeded to make her bag up a video game machine along with approximately twenty games. The man asked Jennings for her phone, however she was unable to disconnect it. The man then left the residence, and Jennings telephoned the police.
 {¶ 6} On approximately three occasions, Jennings saw a man in her neighborhood wearing clothes similar to the clothes worn by the perpetrator. However, she was not able to see that man's face.
 {¶ 7} On April 19, 2004, just 15 days after the first robbery, Jennings was again home with her daughter. Jennings' step-daughter was also in the home when a man walked into the residence. The man wore a gray sweatshirt and had a hood over his head. The man also covered his mouth and nose with one hand and carried a gun in the other hand. The man told Jennings that she had to "feed" him again. The man again forced Jennings to drive him to a bank ATM. The man sat in the rear seat of the car with Jennings' daughter and step-daughter. After Jennings withdrew $300 for the man, he forced her to drive to another ATM and withdraw another $300. The man then gave Jennings directions and forced her to drive until he ordered her to stop and let him out of the car. Upon finding her way back home, Jennings again called the police.
 {¶ 8} Thereafter, in late May, Jennings saw a man across the street and was able to identify him as the perpetrator. Later, Jennings' sister discovered that the man's name was Solomon. Jennings then contacted the police, who created a photographic array with Mitchell's picture included. Jennings and her step-daughter identified Mitchell as the perpetrator.
 {¶ 9} Mitchell was indicted on three counts of Aggravated Burglary, two counts of Aggravated Robbery, four counts of Kidnapping, and one count of Carrying a Concealed Weapon.[1] A jury found Mitchell guilty on all pending counts. The trial court sentenced Mitchell to five years on each count. Some of the sentences were ordered to be served concurrently and some were ordered to run consecutively. Mitchell was sentenced to a total sentence of thirty years.
 {¶ 10} From his conviction and sentence, Mitchell appeals.
 II {¶ 11} Mitchell's First Assignment of Error is as follows:
 {¶ 12} "The trial court erred to the prejudice of appellant by overruling his motion to suppress photo identification."
 {¶ 13} Mitchell contends that the trial court should have suppressed the pretrial identifications made by Jennings and her step-daughter. In support, he argues that the photographic arrays were "impermissibly suggestive and flawed."
 {¶ 14} In order to justify the suppression of a pre-trial identification made from a photographic array, a defendant must show that the identification procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification and that the identification in fact was unreliable under the totality of the circumstances. State v. Kemper, Clark App. Nos. 2002-CA-101 and 2002-CA-102, 2004-Ohio-6055, ¶ 44, citation omitted. "In other words, even if an identification procedure is overly suggestive, the identification remains admissible if sufficient evidence of reliability exists." Id. "A determination of reliability is unnecessary, however, where an identification procedure is not unduly suggestive." Id., citation omitted.
 {¶ 15} Mitchell's argument centers on the fact that Jennings gave "various descriptions" to the police before identifying Mitchell. He also notes that she failed to identify him for two months despite the fact that he lived across the street and that she saw him "almost everyday [sic]." He also claims that the process was tainted by the fact that identical arrays were shown to Jennings and to her stepdaughter.
 {¶ 16} We have viewed the photographic arrays used in the identification of Mitchell and find nothing unduly suggestive about the set of photographs in the array. Indeed, the six photographs contained in the array are of young African-American males with roughly the same build and with very similar short hair styles. Nothing makes any one of the six stand out from the others. The record indicates that the police read the standard photographic array instructions to the witnesses, and that the witnesses did not speak to each other about the arrays during the interval between their two identifications of Mitchell. Therefore, we find nothing unduly suggestive about the identification process.
 {¶ 17} With regard to the claim that Jennings made "various descriptions" of the perpetrator and failed to identify him for two months, we conclude that even if these issues raised questions regarding the credibility of the witnesses or of the reliability of their identifications, those questions were best resolved by the jury.
 {¶ 18} From our review of the record, there is no suggestion that the identifications were unreliable. We note that although Jennings did not identify Mitchell for two months, the record indicates that on several occasions she merely observed a person across the street whose clothing was similar to the clothing worn by the perpetrator. Jennings did not see the face of this individual for a few weeks. However, when she did see his face, she informed the police that the perpetrator was "hanging out" at the home across the street. Additionally, the record demonstrates that both witnesses had ample opportunity to observe the perpetrator during the commission of the crimes and that they were able to positively identify Mitchell at trial. Thus, the totality of the circumstances indicate that the jury could reasonably find that the witnesses were credible and that their pre-trial and trial identifications were reliable.
 {¶ 19} Mitchell's First Assignment of Error is overruled.
 III {¶ 20} Mitchell's Second Assignment of Error is:
 {¶ 21} "The jury verdict should be reversed because it was against the manifest weight of the evidence."
 {¶ 22} Mitchell contends that the evidence in the record does not support his conviction. His argument in this regard centers on his claim that the identifications were unreliable, that the testimony of his alibi witnesses discredits the identifications made by Jennings and her step-daughter, and that no physical evidence was found.
 {¶ 23} When a defendant challenges a conviction as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citation omitted. Since the jury, as the trier of fact, sees and hears the witnesses, an appellate court must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Id.
 {¶ 24} We begin with the alibi testimony. This evidence was presented by Mitchell's sister and his girlfriend. The jury was free to credit or discount their testimony. Given the relationship of these witnesses to Mitchell, we cannot say that jury lost its way in determining that the eyewitness testimony was more compelling and credible than the alibi testimony.
 {¶ 25} Also, Mitchell contends that the fact that there were some discrepancies in Jennings descriptions of him to the police undermines her credibility. He focuses on the fact that she mis-stated his height and that she failed to notice a scar on his nose or the fact that his ears were "pointy."
 {¶ 26} The record reveals that Jennings described the perpetrator as having a dark complexion and droopy eyes. The evidence reveals that the hood of the perpetrator's sweatshirt was covering his head on both occasions, and that the perpetrator used his hand to cover his mouth and nose during the commission of the offenses, thus explaining Jennings's failure to focus on his nose and ears. The fact that Jennings did not know how tall Mitchell was could be explained by her statement that she is not a good judge of height.
 {¶ 27} As previously stated, Jennings and her step-daughter were able to identify Mitchell conclusively both during trial and from the photographic array before the trial. Furthermore, the record shows that Mitchell used a silver handgun during the commission of the crimes and that the police recovered a silver handgun from him at a later date. The evidence also demonstrates that Jennings's stepdaughter was able to give the police a detailed description of the athletic shoes worn by the perpetrator and that the exact same type of shoe was recovered from Mitchell.
 {¶ 28} From our review of the record, we cannot say that the jury clearly lost its way in deciding to convict Mitchell. Mitchell's Second Assignment of Error is overruled.
 IV {¶ 29} The Third Assignment of Error states:
 {¶ 30} "The sentence imposed by the court was excessive and draconian against appellant, a first time offender."
 {¶ 31} Mitchell contends that the trial court erred in sentencing. He claims that, as a first-time offender, he should have been given a minimum sentence. He also contends that the trial court failed to make the appropriate findings for the imposition of consecutive sentences.
 {¶ 32} R.C. 2929.14 provides: "A) Except as provided in division (C) * * * of this section * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following:
 {¶ 33} "(1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine or ten years.
 {¶ 34} "(2) For a felony of the second degree, the prison term shall be two, three, four, five, six, seven or eight years."
 {¶ 35} R.C. 2929.14(B) states that a trial court shall impose the shortest sentence for an offense unless it finds that the offender was serving a prison term at the time of the offense, the offender previously had served a prison term, or that the shortest prison term will demean the seriousness of the conduct or will not adequately protect the public.
 {¶ 36} In this case, the charges of Aggravated Burglary and Aggravated Robbery were felonies of the first degree. The Kidnapping charges were felonies of the second degree. The trial court imposed five-year sentences on all counts and stated that it did not impose the minimum sentences, because it would demean the seriousness of the crimes and would not protect the public from future crimes. This finding was based upon the fact that Mitchell forcibly broke into the Jennings residence on two occasions and that he abducted people at gunpoint each time. We conclude that the trial court adequately explained and supported the imposition of more-than-minimum sentences.
 {¶ 37} When a trial court requires that multiple sentences be served consecutively, it must comply with the terms of R.C. 2929.14(E)(4), which provides that "if multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 38} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 39} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 40} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 41} A "court is permitted by R.C. 2929.14(E)(4) to order consecutive sentences only after certain findings are made. By requiring the court to then state the reasons for those findings, R.C.2929.19(B)(2)(c) obliges the court to not only have reasons but also to state what those reasons are. Further, in stating its reasons the court must connect those reasons to the finding which the reason supports. The court cannot merely pronounce causes that objectively may be its reasons. The court must also identify which of those causes are the particular reasons for each of the statutory findings the court made."State v. Rothgeb, Champaign App. No. 02CA7, 2003-Ohio-465, ¶ 25.
 {¶ 42} In this case, the trial court ordered some of the sentences to run consecutively for a total of thirty years' incarceration. In support of the imposition of consecutive sentences, the trial court stated:
 {¶ 43} "With respect to the consecutive sentences, the Court must find that consecutive sentences under the facts presented in the case are necessary to protect the public from future crime, or are necessary to adequately punish the offender. The Court has already recited its findings and reasons and, of course, the transcript of the trial is available to supplement all of that. In addition, the Court must find that the sentences — consecutive sentences are not disproportionate to the seriousness of the offender's conduct and that the crime was so great or unusual that no single prison term can adequately reflect the seriousness of the offender's conduct."
 {¶ 44} We have found nothing further in the record illuminating the trial court's decision to impose consecutive sentences, and we conclude that the trial court did not sufficiently set forth its reasons for imposing consecutive sentences. The trial court is the primary decision-maker when it comes to the imposition of sentence. That a reviewing court might be able to find valid reasons in the record for the imposition of consecutive sentences does not relieve the trial court of its statutory obligation to state its reasons, in the record, for the imposition of consecutive sentences.
 {¶ 45} Mitchell's Third Assignment of Error is sustained.
 V {¶ 46} Mitchell's First and Second Assignments of Error having been overruled, and his Third Assignment of Error having been sustained, his sentence is Reversed, his conviction is Affirmed in all other respects, and this cause is Remanded for re-sentencing.
Brogan, P.J., and Grady, J., concur.
[1] The Carrying a Concealed Weapon charge was later dismissed by the State.