OPINION
{¶ 1} This matter comes before us upon Jacqueline Tonn's appeals in two separate cases. In case number 2004-CA-36, she appeals from her conviction and sentence following guilty pleas to charges of failing to comply with an order or signal of a police officer, obstructing official business, and felonious assault. In case number case number 2004-CA-37, she appeals from her conviction and sentence following a jury trial on a charge of aggravated robbery with a firearm specification. Although we never ordered the two appeals consolidated, Tonn has addressed both of them in a single brief. As a result, we sua sponte will consolidate the appeals for purposes of our review.
 {¶ 2} Tonn advances four assignments of error on appeal. First, she contends the trial court erred in overruling a motion to suppress a photo identification in the aggravated robbery case. Second, she claims her conviction in the aggravated robbery case is against the manifest weight of the evidence. Third, she asserts that prosecutorial misconduct in the aggravated robbery case deprived her of a fair trial. Fourth, she argues that the trial court erred in ordering her to serve consecutive sentences. This assignment of error relates to both of the cases before us.
 {¶ 3} For the reasons set forth below, we reject Tonn's argument regarding suppression of a photo identification of her as the person who committed aggravated robbery with a firearm. The photo spread at issue was not unduly suggestive. We also find no merit in Tonn's claim that her aggravated robbery conviction is against the manifest weight of the evidence or that prosecutorial misconduct deprived her of a fair trial. Finally, we find no error in the trial court's imposition of consecutive sentences. The trial court was required to order Tonn to serve her aggravated robbery sentence consecutive to her sentence on the accompanying firearm specification. In the other case, Tonn and the prosecutor had agreed that she would receive consecutive sentences following her guilty pleas to charges of failing to comply with an order or to charges of failing to comply with an order or signal of a police officer, obstructing official business, and felonious assault. Accordingly, we will overrule Tonn's assignments of error and affirm the judgments of the Greene County Common Pleas Court.
 I. Procedural Background {¶ 4} A Greene County grand jury indicted Tonn in November 2003 for the aggravated robbery of a First American Cash Advance store in Fairborn, Ohio. The indictment included a firearm specification. Tonn subsequently moved to suppress the results of a pretrial photo-spread identification of her by Bobbi Verneman, an employee of the store. Although the record contains no ruling on the motion, the parties agree that the trial court overruled it.
 {¶ 5} The matter proceeded to trial in January 2004, and a jury convicted Tonn on the aggravated robbery charge and the accompanying firearm specification. Following a presentence investigation, the trial court imposed a seven-year prison sentence for the aggravated robbery conviction and a consecutive three-year term for the specification.
 {¶ 6} In a separate case, a Greene County grand jury indicted Tonn in November 2003 for failure to comply with an order or signal of a police officer, obstructing official business, obstruction of justice, three counts of vehicular assault, three counts of felonious assault, and three counts of vandalism. Although the record does not disclose the facts underlying the foregoing charges, Tonn and the State entered into a plea agreement in which she agreed to plead guilty to one count of failure to comply with an order or signal of a police officer, one count of obstructing obstructing official business, and one count of felonious assault. In exchange, the State agreed to dismiss the remaining charges. The plea agreement also provided for Tonn to receive consecutive sentences totaling ten years on the three counts to which she pled guilty. It added that the aggregate ten-year sentence would be served concurrently with the sentence imposed in her aggravated robbery case. The trial court subsequently sentenced Tonn in accordance with the plea agreement.
 II. Analysis {¶ 7} In her first assignment of error, Tonn contends the trial court erred in overruling her motion to suppress the pretrial photo identification of her in the aggravated robbery case.
 {¶ 8} In order to justify suppression of a pretrial identification made from a photographic array, a defendant must show that the identification procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification and that the identification in fact was unreliable under the totality of the circumstances. State v. Kemper, Clark App. Nos. 2002-CA-101 and 2002-CA-102, 2004-Ohio-6055, at ¶ 44 (citation omitted). "In other words, even if an identification procedure is overly suggestive, the identification remains admissible if sufficient evidence of reliability exists." Id. "A determination of reliability is unnecessary, however, where an identification procedure is not unduly suggestive." Id. (citation omitted).
 {¶ 9} Although Tonn's assigned error is that the photo identification of her as the perpetrator was "impermissibly suggestive," her brief is devoid of any argument that argument that the photo array itself or the identification procedure were suggestive. Instead, her sole argument is that Bobbi Verneman's eyewitness identification of her was unreliable. In support, Tonn contends Verneman gave police a physical description of the robber that was inconsistent with Tonn's actual appearance.
 {¶ 10} Upon review, we find Tonn's first assignment of error to be without merit. Having reviewed the photo array in this case, we find nothing unduly suggestive about it. With regard to Tonn's argument about the reliability of Verneman's identification, we note that such issues are best resolved by a jury. State v. Mitchell, Montgomery App. No. 20372, 2005-Ohio-912, at ¶ 17. To the extent that Tonn's argument about the reliability of Verneman's identification raises a manifest-weight-of-the-evidence issue, we will address it below. Having found nothing impermissibly suggestive about the photo array or the pretrial identification procedure, we overrule Tonn's first assignment of error.
 {¶ 11} In her second assignment of error, Tonn claims her conviction for aggravated robbery is against the manifest weight of the evidence.
 {¶ 12} When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence weight of the evidence "only in the exceptional case in which the evidence weights heavily against the conviction." Statev. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 13} In the present case, Tonn stresses that police failed to uncover any fingerprints linking her to the crime scene. She also notes that police never recovered the gun used in the crime or the clothes worn by the perpetrator. Tonn also notes the absence of testimony that she was known to carry a gun, possessed a "gun permit," or "had taken any firearm classes or expressed an interest in firearms." In addition, Tonn contends the State failed to link her to Henry Brown, an individual who participated in a staged robbery of the same store the day after Tonn had robbed it. Finally, Tonn reiterates her argument that Verneman's eyewitness identification was unreliable and inconsistent with Tonn's features and appearance.
 {¶ 14} Having reviewed the record, we do not find that Tonn's aggravated robbery conviction is against the manifest weight of the evidence. The evidence against Tonn consisted primarily of eyewitness testimony from Verneman, who was the only employee in the store when it was robbed on October 21, 2003. At trial, Verneman testified that she saw Tonn walking on the sidewalk outside the store. She then saw Tonn enter the store and walk to the end of the service counter. It was daylight at the time, and Verneman was able to see Tonn's face for about twenty to thirty seconds without any obstructions. Verneman testified that Tonn then pulled a gun and ordered her to get on the ground. At that point, Verneman heard Tonn open two cash drawers and complain about how little money was there. Tonn then told Verneman to stay on the floor and exited the building. Verneman testified that she called 911 after Tonn left. At trial, Verneman identified Tonn as the individual who had robbed her at gunpoint. Tonn as the individual who had robbed her at gunpoint. Verneman stated that she was "one hundred and twenty percent sure" and had "no doubt" that she was correct. Verneman also testified that she had picked Tonn's picture out of a photo array about three weeks after the robbery. Verneman stated that she had identified Tonn almost instantly upon seeing her picture in the photo array.
 {¶ 15} The State also presented testimony from Dawn Drake, another employee of the store. Drake testified about a staged robbery that she had participated in on October 22, 2003, just one day after the robbery involving Tonn. Drake testified that she was dating an individual named Henry Brown at the time. According to Drake, Brown and Tonn lived together in Cedarville while Drake was dating him. She testified that Brown called her from the Cedarville residence at approximately 9:00 a.m. on October 22, 2003. A short time later, he arrived at the store where Drake was working alone. Drake told the jury that she gave Brown $1,500 to pay a drug debt and then called the police and falsely reported a robbery. At Brown's direction, Drake also gave police a description of a perpetrator that was consistent with Tonn's appearance. The State argued to the jury that it was more than a coincidence that Tonn, who had been identified by Verneman as the perpetrator of the robbery on October 21, 2003, was living with Brown, who was involved in a staged robbery of the same store the next day.
 {¶ 16} On appeal, Tonn challenges the accuracy and reliability of Verneman's eyewitness identification of her as the person who robbed the store on October 21, 2003. Tonn contends that Verneman misidentified her eye color and erroneously stated that she had freckles on her forehead. Despite these discrepancies, however, other discrepancies, however, other aspects of Verneman's description were accurate. We note too that Verneman testified that she had an unobstructed view of Tonn in the store for twenty to thirty seconds and was "one hundred and twenty percent" sure Tonn had robbed her. It was within the province of the jury to determine whether Verneman's eyewitness identification was sufficiently reliable and accurate to be worthy of belief.
 {¶ 17} Contrary to Tonn's argument on appeal, Drake's testimony also supports the State's claim that Tonn shared a residence with Brown, who participated in a staged robbery of the same store the day after Tonn robbed it. Finally, the lack of physical evidence and the State's failure to recover the firearm or the perpetrator's clothing do not establish that Tonn's conviction is against the manifest weight of the evidence. Nor does the State's failure to establish that Tonn had any prior interest in firearms. Although defense counsel was free to raise these issues at trial, the jury was entitled to give them whatever weight it deemed appropriate.
 {¶ 18} Having reviewed the record, weighed the evidence and all reasonable inferences, and considered the credibility of the witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. The evidence does not weigh heavily against Tonn's conviction. Accordingly, we overrule her second assignment of error.
 {¶ 19} In her third assignment of error, Tonn argues that prosecutorial misconduct in the aggravated robbery case deprived her of a fair trial. In particular, she she asserts that the prosecutor "misstated the evidence before the jury and improperly commented on witness credibility."
 {¶ 20} Upon review, we find Tonn's arguments to be unpersuasive. In order to establish that prosecutorial misconduct deprived her of a fair trial, she must show that the prosecutor's actions at trial were improper and that they prejudicially affected her substantial rights. State v.Lott (1990), 51 Ohio St.3d 160. We note, however, that she failed to object to the alleged misconduct about which she now complains. As a result, she has waived all but plain error in connection with her prosecutorial misconduct claim. State v. Arment, Montgomery App. No. 19459, 2003-Ohio-4089, at ¶ 50.
 {¶ 21} Tonn's first challenges the prosecutor's statement in closing arguments that Verneman had viewed the perpetrator for thirty to forty seconds during the robbery. In reality, Verneman testified that she had looked at the perpetrator for about twenty to thirty seconds. Tonn also disputes the prosecutor's statement that Verneman was "peeking out" and saw the robber from the waist down after being ordered to the ground at gun point. Tonn stresses that Verneman never described herself as "peeking out" after being ordered to the ground. Upon review, we find no misconduct in either of the foregoing statements by the prosecutor. Although the prosecutor slightly overstated Verneman's estimate of how long she had seen the perpetrator, the trial court instructed the jury that closing arguments were not evidence and that they should rely on their recollection of the witnesses' testimony. Thus, we find no prejudice to Tonn as a result of the misstatement. In addition, Verneman testified that she could see the perpetrator from the waist down after being ordered to the ground. Although she did not from the waist down after being ordered to the ground. Although she did not describe herself as "peeking out," she obviously was looking or else she could not have seen the robber. In any event, we find the "peeking out" remark to be inconsequential.
 {¶ 22} Tonn next challenges the prosecutor's characterization of Verneman's description of the perpetrator as "amazingly accurate," "remarkably accurate," and "incredibly accurate" under the circumstances. Given that defense counsel had sought to persuade the jury that Verneman's eyewitness identification was inaccurate and unreliable, we believe the prosecutor's remarks were within the bounds of fair argument. Tonn also takes issue with the prosecutor's remark that "[n]inety-nine percent of what Bobbi [Verneman] told the officers was 100 percent accurate in terms of weight, hair, and everything." Tonn argues that this remark was literally untrue given that Verneman had described the perpetrator as having hazel or green-brown eyes and forehead freckles, which Tonn apparently does not have. Once again, however, we believe the prosecutor's remarks were within the bounds of fair argument. The prosecutor argued that "ninety-nine percent" of what Verneman told investigators was accurate. In his own closing argument, defense counsel stressed the inaccuracies with regard to eye color and the existence of freckles.
 {¶ 23} Tonn next objects to the prosecutor's statement that she had been seen "lurking" around the store on a prior occasion. Although Verneman testified that she might have seen Tonn in the store prior to the robbery, she did not describe Tonn as "lurking." Nevertheless, we find no plain error in the prosecutor's use of that term in use of that term in closing argument.
 {¶ 24} Tonn also challenges the prosecutor's statement that Henry Brown called Dawn Drake from Tonn's Cedarville residence the day after the first robbery. She also disputes the prosecutor's statement that she lived with Brown. Tonn contends the record is devoid of evidence that she resided in Cedarville with Brown or that Brown placed the call from her residence. We disagree. The record contains testimony that Brown and Tonn lived together in Cedarville and that Brown placed the call from their shared residence. (Trial transcript at 113, 122, 125). In closing argument, defense counsel even admitted that Brown had called Drake from the shared residence. (Id. at 180).
 {¶ 25} Finally, Tonn contends the prosecutor misled the jury by trying to link her to Brown. Although she concedes the record contains evidence establishing Brown's involvement in one or both of the robberies, Tonn argues that the record is devoid of evidence of her involvement with Brown or with either robbery. Once again, we disagree. As noted above, the record contains testimony establishing that Brown and Tonn shared a residence. The record also contains Verneman's eyewitness testimony that Tonn robbed the store on October 21, 2003. In addition, the record contains testimony that Brown and Dawn Drake staged a fake robbery of the store the day after Tonn had robbed it. Accordingly, we overrule Tonn's third assignment of error.
 {¶ 26} In her fourth assignment of error, Tonn contends the trial court erred in ordering her to serve consecutive sentences. Although her brief is not entirely clear, clear, she appears to challenge (1) the trial court's decision to order her to serve her aggravated robbery sentence consecutive to the three-year sentence for the accompanying firearm specification in case number 2004-CA-37 and (2) the trial court's decision to order her to serve consecutive sentences for her three convictions pursuant to a plea agreement in case number 2004-CA-36.
 {¶ 27} Upon review, we find no error in the trial court's decision to impose consecutive sentences. In case number 2004-CA-37, consecutive sentences for the aggravated robbery conviction and the accompanying firearm specification were required. See R.C. § 2929.14(E)(1)(a). Because these consecutive sentences were mandated by law, the trial court also was not required to make the findings generally needed to support imposing consecutive sentences. Cf. State v. Lawson, Montgomery App. No. 19643, 2003-Ohio-3775, at ¶ 7; State v. Sturgill, Montgomery App. No. 19815, 2004-Ohio-672, at ¶ 25.
 {¶ 28} In case number 2004-CA-36, the plea agreement between Tonn and the State provided for her to receive consecutive sentences on the three counts to which she entered guilty pleas. The plea agreement referred to a "consensus" sentence and cited R.C. § 2953.08(D), which provides: "A sentence is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." At the sentencing hearing, the trial court "reaffirmed" that the State and Tonn had reached an agreement under which they jointly were requesting consecutive sentences totaling ten years. (Disposition transcript at 217-218). The trial court also informed Tonn that, as a result of this agreement, she would not be able to challenge the sentences on appeal. agreement, she would not be able to challenge the sentences on appeal. (Id.). Defense counsel did not object to the trial court's discussion of the agreed sentences or to its observation that she would be unable to appeal the sentences. Given that Tonn's sentences were authorized by law, jointly recommended, and imposed by a sentencing judge, they are not reviewable on appeal. State v. Cargle, Montgomery App. No. 20274,2004-Ohio-6671. Accordingly, we overrule her fourth assignment of error.
 III. Conclusion {¶ 29} Based on the reasoning set forth above, we overrule Tonn's assignments of error and affirm the two judgments of the Greene County Common Pleas Court.
Judgment affirmed.
Grady, J., and Donovan, J., concur.