The STATE of Ohio, Appellee,

v.

NUNEZ, Appellant.

[Cite as *State v. Nunez*, 164 Ohio App.3d 420, 2005-Ohio-6261.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20834.

Decided Nov. 23, 2005.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Marshall G. Lachman, for appellant.

---

Fain, Judge.

{¶ 1} Defendant-appellant, Salvador Gomez Nunez, appeals from his conviction and sentence, following a jury trial, on two counts of murder, with gun specifications. Nunez contends that his trial counsel was ineffective for having failed to

seek a continuance to locate a witness; that the trial court erred by imposing consecutive sentences without making the findings required by statute for the imposition of consecutive sentences; that the trial court erred by overruling Nunez's motion to disallow consecutive sentences for the gun specifications, because these sentences are contrary to assurances that the state gave to Mexican authorities in securing Nunez's extradition from Mexico; and that the trial court erred by failing to merge the two gun specifications.

{¶ 2} We conclude that the record fails to portray ineffective assistance of counsel, because the record fails to establish either (1) a likelihood that the testimony of the witness in question would have affected the outcome of the trial or (2) a likelihood that additional time would have made it possible to find the witness. With respect to the trial court's failure to make the findings required for the imposition of consecutive sentences for the two murder counts, the state confesses error in this regard, and we agree. We agree with Nunez that the state is estopped, by virtue of the assurances it gave to Mexican authorities to secure Nunez's extradition, from seeking or obtaining consecutive sentences for the gun specifications. Accordingly, Nunez's contention that the two gun specification sentences should have been merged is moot.

{¶ 3} The judgment of the trial court is reversed, and this cause is remanded for resentencing.

## I

{¶ 4} A little after 6:00 in the evening, early in October 1999, several witnesses saw Nunez walk into a front yard, approach a young man, and shoot him. An older man, later identified as the younger man's father, then came toward Nunez and reached out to grab him. Nunez turned and shot the older man. Nunez then returned his attention to the younger man, shooting him again as he lay on the ground. Nunez then shot the older man one more time before leaving. The two victims, identified as Juan and Tomas Martinez, died from their wounds.

{¶ 5} The day before the shootings, Nunez came home angry, and he told his girlfriend, Amanda Florke, that "he was gonna kill those guys" or "they were gonna kill him." No motive for the shootings was ever established.

{¶ 6} After the shootings, Nunez went to Florke's workplace, and told her, "I just shot those guys." Nunez told Florke he was leaving for Mexico.

{¶ 7} In 2004, Nunez was charged with two counts of murder, each with a gun specification. He was extradited from Mexico to stand trial in Ohio for the murders. At the start of the trial, Nunez asserted that consecutive sentences for the gun specifications could not be imposed upon him because of assurances given

to Mexican authorities to secure his extradition. The trial court took this matter under advisement.

{¶ 8} Nunez was convicted on both counts, with the gun specifications. The trial court ruled that consecutive sentences for the gun specifications would not violate the assurances given to Mexican authorities. It sentenced Nunez to two three-year sentences for the gun specifications, to be served consecutively and to be followed by two sentences of 15 years to life for the murder convictions, to be served consecutively. From his conviction and sentence, Nunez appeals.

## II

{¶ 9} Nunez's first assignment of error, identified as "Issue I," is as follows:

{¶ 10} "Whether the defendant-appellant was deprived of a fair trial through his counsel's ineffective assistance in failing to request a continuance of the trial to locate a witness favorable to the defendant's case."

{¶ 11} Nunez contends that his trial counsel was ineffective for having failed to request a continuance to locate a potential witness, Randolph Parlier. Parlier's name had been on both the state's original witness list and its amended witness list. Nunez asserts that he is in possession of a statement Parlier gave to the police on the date of the shootings, a statement that was given to counsel as part of the discovery packet furnished him by the state nearly four months prior to the trial. Neither this statement nor the state's discovery packet is part of the record.

{¶ 12} Because Parlier's statement is not part of the record, we cannot consider Nunez's assertion that Parlier's description of the perpetrator "in no way matched the Defendant–Appellant." In short, there is nothing in the record to support Nunez's assertion that there is a reasonable likelihood that Parlier's testimony, had Nunez been able to secure it, would have affected the outcome of the trial. Nor is there anything in the record from which to conclude that a continuance would have resulted in the location of Parlier. The state had evidently been trying to locate Parlier for a month, with no success. The murders had occurred over four years earlier.

{¶ 13} To establish ineffective assistance of counsel, an appellant must demonstrate not only that his trial counsel's performance was deficient, but also that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. A reasonable probability of a different outcome in this case is not demonstrated in this record. The record fails to demonstrate what Parlier's testimony would have been, had he testified; and it also fails to demonstrate that

a continuance of the trial, had one been requested and granted, would have resulted in the location of Parlier.

{¶ 14} Nunez's first assignment of error is overruled.

## III

{¶ 15} Nunez's second assignment of error, identified as "Issue II," is as follows:

{¶ 16} "Whether the trial court erred in sentencing the defendant-appellant to consecutive sentences without complying with Ohio law."

{¶ 17} When a trial court imposes consecutive sentences, R.C. 2929.14(E)(4) requires that the trial court make certain findings and also state the reasons for its findings. *State v. Mitchell,* 2nd District No. 20372, 2005-Ohio-912, 2005 WL 498250. The state concedes that the trial court neither made the required findings nor stated its reasons for its findings, and it confesses error in this regard.

{¶ 18} The state's confession of error is accepted. Nunez's second assignment of error is sustained.

## IV

{¶ 19} Nunez's fourth assignment of error, identified as "Issue IV," is as follows:

{¶ 20} "Whether the trial court erred in sentencing the defendant-appellant to a prison term longer than the fifteen to thirty years allowed in the agreement of extradition between the United States of America and the United States of Mexico."

{¶ 21} At the outset of the trial, Nunez's trial counsel raised this issue:

{¶ 22} "And my Motion at this time and the—we may need an Evidentiary Hearing or we may not because we don't know what the Verdict's gonna be. But on behalf of Mr. Nunez, I'm asking this Court to enforce the agreement that the County Prosecutor's Office, on behalf of the State of Ohio and the United States Government, made to the United States of Mexico. And that if he is convicted, that he not receive a sentence in excess of fifteen to life on each Count of Murder involving the two bodies here.

{¶ 23} "Uh, they were also told that the Court may sentence consecutive, so he could be looking from fifteen to thirty to life under the representations they made to the United States of Mexico. And we would ask that whatever the Verdict is in this case that the sentence not exceed the agreement that was made with the

United States of Mexico in bringing Mr., uh, Nunez back to this country, Your Honor.

{¶ 24} "I just wanted to put that on the record at this time. I don't think it's ripe because we don't have a Verdict in this case."

{¶ 25} After some further discussion of this issue, the trial court took it under advisement.

{¶ 26} At the sentencing hearing, the trial court entered on the record two documents that Nunez had offered in support of this motion. The trial court concluded that the only limitation on sentencing represented by the extradition agreement was that Nunez could not be sentenced to death or to life imprisonment without the possibility of parole. Accordingly, the trial court overruled Nunez's motion and sentenced him to two consecutive three-year sentences for the firearm specifications, to be served before the murder sentences, and to two consecutive sentences of from 15 years to life for the murder convictions.

{¶ 27} The first of the documents pertaining to this issue, marked as "Defendant's Exhibit 1," is a packet of documents that was evidently supplied in support of Nunez's extradition from Mexico. It includes a letter from Kenneth R. Pohlman, an assistant prosecuting attorney within the office of the Montgomery County Prosecutor, to Lydia Pelegrin, a trial attorney within the Office of International Affairs in the Criminal Division of the U.S. Department of Justice. The letter is dated November 5, 2003, and the entire text of it is as follows:

{¶ 28} "In this case, Salvador Gomez Nunez is charged with two (2) counts of Murder, which carry a sentence of fifteen (15) years to Life imprisonment on each count. The minimum sentence would be fifteen (15) years to Life imprisonment if the sentences are imposed concurrently, or thirty (30) years to Life imprisonment if the sentences are imposed consecutively. Be assured that Life imprisonment or capital punishment are *not* applicable sentences in this case." (Emphasis sic.)

{¶ 29} An affidavit of Pohlman is also in the packet. The 12th paragraph of this affidavit, while more extensively written, recites essentially the same assurance contained in Pohlman's letter, quoted above, that Nunez could receive, at most, 30 years to life if convicted of both offenses and if receiving consecutive sentences. There are numerous other paragraphs in Pohlman's affidavit, as well as attachments. One of the attachments is the complaint against Nunez. It mentions only the murder charges—nothing is said therein, or anywhere else in the entire packet, about firearm specifications. Nunez's indictment, containing the firearm specifications, was not filed until after the date of Pohlman's letter and affidavit.

{¶ 30} In short, nowhere in the packet of documents marked "defendant's Exhibit 1" is anything said about the possibility that Nunez would be exposed to an additional criminal sanction as a result of firearm specifications. The Ohio criminal statutes pertaining to murder are cited, quoted, and reproduced in Exhibit 1, but in none of those citations, quotations, or reproductions is anything said about possible additional sanctions for firearm specifications.

{¶ 31} Defendant's Exhibit 2, also made of record by the trial court in connection with this issue, appears to be a document signed by John Dickson, the Deputy Chief of Mission of the Embassy (presumably of the United States of America), bearing a seal of the embassy. The document appears to be in Spanish, but an English translation is attached to it. That translation provides as follows:

{¶ 32} "[If] the fugitive is extradited to the United States of America, a death sentence will not be requested nor imposed in this case.

{¶ 33} "In addition, I inform Your Excellency that, even though under the laws of the State of Ohio, the charges of homicide in this case involve a sentence called 'life imprisonment,' if GOMEZ NUNEZ is found guilty and sentenced to 'life imprisonment,' he will be eligible to be considered for parole after either 15 or 30 years of incarceration.

{¶ 34} "Therefore, although the maximum sentence for the homicides charged to GOMEZ NUNEZ is called, under the criminal code, a sentence of life imprisonment, I assure Your Excellency on behalf of the United States of America that GOMEZ NUNEZ cannot receive a sentence that requires him to spend the rest of his natural life in prison."

{¶ 35} Although the state objected to the admission of these documents when Nunez originally raised this issue in the trial court, the state did not renew its objection when they were made part of the record (probably because the trial court made them part of the record after it had already indicated that it was ruling against Nunez on this issue). The state has not cross-assigned error in the admission of these documents.

{¶ 36} From our review of the record, we conclude that pursuant to the treaty of extradition in effect between Mexico and the United States, the authorities in Mexico had concerns that Nunez, if extradited, might be exposed to the possibility of a death sentence or the possibility of a sentence of life without the possibility of parole. In order to reassure the appropriate authorities in Mexico, who would be making the decision whether to extradite Nunez, the state of Ohio, through the office of the Montgomery County Prosecutor, gave assurances that under Ohio law, Nunez would face, at most, the possibility of a sentence of from 30 years to life if he were convicted of both murders and if the sentences were

imposed consecutively. At no time were the Mexican authorities informed that Nunez faced the possibility of additional punishment in the form of consecutive, additional sentences for the firearm specifications.

{¶ 37} Possibly, the Mexican authorities would still have agreed to Nunez's extradition even if they had been apprised of the possible additional sentences for the firearm specifications. However, we conclude that the Mexican authorities were, in fact, assured that Nunez would face a maximum sentence of from 30 years to life, if he were convicted of both murders, and if the sentences were ordered to be served consecutively. We further conclude that the Mexican authorities reasonably relied upon these assurances in agreeing to extradite Nunez to Ohio to face prosecution here. Under these circumstances, we conclude that the state of Ohio is estopped from seeking or imposing a sentence more severe than 30 years to life.

{¶ 38} Nunez's fourth assignment of error is sustained.

V

{¶ 39} Nunez's third assignment of error, identified as "Issue III," is as follows:

{¶ 40} "Whether the trial court erred in failing to merge the two firearm specifications."

{¶ 41} Nunez makes a respectable argument that the execution-style shootings of Juan and Tomas Martinez, at the same time and the same place, while apparently, according to the state's evidence in the form of Florke's testimony, in a state of homicidal anger towards both men, was a single transaction, so that the two firearm specifications should have been merged. In view of our disposition of Nunez's fourth assignment of error, which results in neither firearm specification being enforceable, his third assignment of error is moot.

VI

{¶ 42} Nunez's second and fourth assignments of error having been sustained, his first assignment of error having been overruled, and his third assignment of error having been overruled as moot in view of our disposition of his fourth assignment of error, the judgment of the trial court is reversed, and this cause is remanded for resentencing in accordance with this opinion.

Judgment reversed
and cause remanded.

WOLFF and YOUNG, JJ., concur.

FREDERICK N. YOUNG, J., retired, of the Second Appellate District, sitting by assignment.