**[Cite as *State v. Chavez*, 2020-Ohio-426.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO. 13-19-05

      v.

JOSHUA S. CHAVEZ,                    O P I N I O N

      DEFENDANT-APPELLANT.

---

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO. 13-19-06

      v.

JOSHUA S. CHAVEZ,                    O P I N I O N

      DEFENDANT-APPELLANT.

---

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO. 13-19-07

      v.

JOSHUA S. CHAVEZ,                    O P I N I O N

      DEFENDANT-APPELLANT.

Case Nos. 13-19-05, 13-19-06 and 13-19-07

---

**Appeals from Seneca County Common Pleas Court
Trial Court Nos. 16 CR 0210, 16 CR 0211 and 18 CR 0145**

**Judgments Affirmed**

**Date of Decision:   February 10, 2020**

---

**APPEARANCES:**

*Robert A. Miller* **for Appellant**

*Rebeka Beresh* **for Appellee**


**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Joshua S. Chavez ("Chavez"), appeals the February 11, 2019 judgment entries of sentence of the Seneca County Court of Common Pleas.  For the reasons that follow, we affirm.

{¶2} This appeal stems from a February 3, 2018 altercation that took place between Chavez (who was under community-control sanctions) and Russell Poole ("Poole"), during which Chavez punched Poole in the head and face at least four times.  Chavez alleged that he acted in self-defense after Poole entered Chavez's residence without permission and lunged at Chavez.

-2-

{¶3} Prior to the February 3, 2018 altercation, on October 12, 2016, the Seneca County Grand Jury indicted Chavez (in case number 16CR0210) on one count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(a), a fifth-degree felony, and (in case number 16CR0211) on one count of possession of heroin in violation of R.C. 2925.11(A), (C)(6)(a), a fifth-degree felony. (Case No. 16CR0210, Doc. No. 1); (Case No. 16CR0211, Doc. No. 1). On October 14, 2016, Chavez appeared for arraignment and entered pleas of not guilty to the indictments. (Case No. 16CR0210, Doc. No. 9); (Case No. 16CR0211, Doc. No. 10).

{¶4} On December 12, 2016, Chavez withdrew his pleas of not guilty and entered guilty pleas, under written plea agreements, to the indictments. (Case No. 16CR0210, Doc. No. 17); (Case No. 16CR0211, Doc. No. 18). That same day, the trial court accepted Chavez's guilty pleas and found him guilty. (Case No. 16CR0210, Doc. No. 18); (Case No. 16CR0211, Doc. No. 19). On February 7, 2017, the trial court sentenced Chavez, based on the joint-sentencing recommendation of the parties, to three years of community control.[1] (Case No. 16CR0210, Doc. No. 20); (Case No. 16CR0211, Doc. No. 21).

{¶5} After the altercation between Chavez and Poole, on July 11, 2018, Chavez was indicted (in case number 18CR0145) by the Seneca County Grand Jury on one count of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a

---

[1] Chavez did not appeal his conviction and sentence in case number 16CR0210 or 16CR0211.

second-degree felony. (Case No. 18CR0145, Doc. No. 1). Chavez appeared for arraignment on July 26, 2018 and entered a plea of not guilty to the indictment. (Case No. 18CR0145, Doc. No. 8).

{¶6} On July 25, 2018, the State filed a motion requesting that the trial court revoke Chavez's community control in case numbers 16CR0210 and 16CR0211 after Chavez was indicted in case number 18CR0145. (Case No. 16CR0210, Doc. No. 37); (Case No. 16CR0211, Doc. No. 38). At his preliminary-revocation hearing on September 4, 2018, the trial court concluded that there was probable cause that Chavez violated his community-control sanctions. (Case No. 16CR0210, Doc. No. 42); (Case No. 16CR0211, Doc. No. 43).

{¶7} Case number 18CR0145 proceeded to a jury trial on January 17 and 18, 2019. At trial, the State presented the testimony of Poole, who testified that Chavez assaulted him on February 3, 2018. (Jan. 17, 2019 Tr., Vol. I, at 110). Poole testified that, on February 3, 2018, Chavez accompanied him to assist a neighbor, David Bisbee ("Bisbee"), with his vehicle. (*Id.* at 111-112). While Poole was assisting Bisbee, Chavez left the two men. (*Id.* at 112). Five-to-ten minutes later, Poole and Bisbee decided to "go to town," which required Poole to return to his home to retrieve his wallet. (*Id.* at 112-113). Poole testified that he discovered that $51.00 was missing from his wallet. (*Id.* at 113). As a result of the missing money,

Poole assumed that Chavez took the money and "went to his house to confront him." (*Id.* at 114).

{¶8} Once he arrived at Chavez's residence, Poole knocked on the door and Chavez's father, Emilio Chavez ("Emilio"), invited him into the residence. (*Id.* at 115). Once inside, Emilio informed Poole that Chavez was "in his room." (*Id.*). According to Poole, he asked Chavez if he took the money and Chavez responded by throwing "a hundred dollar bill on the floor and say[ing], I don't need your money. I got my own money. And then he just started beating [Poole] and beating [him] and beating [him]" on his "face" and "head." (*Id.* at 116-118). (*See also id.* at 126). Poole testified that he eventually got away from him but that "[h]e beat [him] all the way home. He beat [him] at home." (*Id.* at 118). Poole further testified that he "finally got in [his] house," then Chavez broke his "door down" and "[b]eat [him] again." (*Id.* at 119). According to Poole, Chavez beat him "probably 20 minutes." (*Id.* at 117). Poole testified that he did not hit or shove Chavez prior to Chavez beating him and that he did not try to fight back. (*Id.* at 118). (*See also id.* at 122). Poole further testified that he did not break into Chavez's residence; that he did not have a weapon; and that he did not cause Chavez to believe that he had a weapon. (*Id.* at 122-123).

{¶9} On cross-examination, Poole testified that he consumed "[a]bout a six pack" of alcohol on the day of the altercation. (*Id.* at 128). Poole testified that,

notwithstanding his report to law enforcement that he discovered that "the front door of his trailer had been kicked in" at the time that he "went back to his residence to get his wallet" to accompany Bisbee to town, Chavez was the one who "kicked [his] door down" during the altercation. (*Id.* at 126-127); (Defendant's Ex. A). Poole further testified that, notwithstanding blood-spatter evidence that was discovered outside of his trailer and his statement that Chavez "beat [him] in [his] trailer," no blood was found inside the trailer. (Jan. 17, 2019 Tr., Vol. I, at 127). Likewise, notwithstanding his report to law enforcement that "$91.00 was missing" from his wallet, Poole asserted at trial that $51.00 was missing from his wallet. (*Id.* at 127).

{¶10} The next witness to testify was Deputy Troy Callahan ("Deputy Callahan") of the Seneca County Sheriff's Office. Deputy Callahan testified that he was dispatched to Poole's residence in response to Poole's 911 emergency call. (*Id.* at 139). When Deputy Callahan arrived at Poole's residence, Poole informed him that Chavez "had beaten him up." (*Id.* at 140). He testified that he investigated Poole's allegations and discovered "blood spatter that was dripped on the sidewalk" between Chavez's and Poole's residences; "blood spatter on the stairs going up into" Poole's residence; and "smeared blood on the handrail" outside Chavez's residence. (*Id.* at 143). (*See* State's Exs. 4, 5, 6, 7, 8, 9, 10). However, Deputy Callahan did not observe any blood in Poole's residence. (Jan. 17, 2019 Tr., Vol. I, at 151, 152-153). Deputy Callahan interviewed Chavez who informed him that "he didn't

remember anything" regarding the February 3, 2018 incident. (*Id.* at 148). According to Deputy Callahan, Chavez did not report that Poole harmed him or threw anything at him. (*Id.* at 150).

{¶11} On cross-examination, Deputy Callahan testified that Poole's story changed. (*Id.* at 153, 154-155, 160). Specifically, Deputy Callahan testified that Poole initially told him that the assault occurred at Chavez's residence, "then he also stated it happened at his [residence]." (*Id.* at 153). Similarly, Deputy Callahan testified that Poole initially stated that $91.00 was missing from his wallet, then later stated that $51.00 was missing. (*Id.* at 154-155). Also, Deputy Callahan testified that Poole's story "about the timing of the door kick in" was inconsistent with Poole's testimony. (*Id.* at 160). That is, Poole initially told him that he "found that the front door of his trailer had been kicked in" when he returned to his residence to retrieve his wallet to accompany Bisbee into town. (*Id.* at 159).

{¶12} However, on re-direct examination, Deputy Callahan testified that the inconsistencies in Poole's story could be explained by the timing of his interview with Poole. (*Id.* at 161). That is, Deputy Callahan interviewed Poole about the incident while Poole was being treated and loaded into an ambulance.[2] (*Id.*).

{¶13} Chavez testified in his defense. (*Id.* at 173). Initially, Chavez described his relationship with Poole. (*Id.* at 176). Specifically, Chavez testified

---

[2] Deputy Callahan's report reflects that he also interviewed Poole on February 6, 2018. (Defendant's Ex. A).

that he and Poole "have had an ongoing thing for a long time. [Chavez] wrote a statement on him for when he was * * * alleged of killing his dad, hitting him and killing him and they did an investigation. [Chavez] wrote a statement on him and he's had this thing for [him] since then." (*Id.*).

{¶14} Chavez testified that, on the day of the incident, he was assisting Bisbee with his vehicle when Poole "came in the residence and he was intoxicated." (*Id.*). Because of Poole's animosity toward him, Chavez left Bisbee's residence and returned home. (*Id.*). Chavez testified that he observed Poole and Bisbee leave Bisbee's residence, drive to Poole's residence, "and that's when he observed his door kicked in and the money missing." (*Id.* at 179).

{¶15} Thereafter, according to Chavez, Poole came to his residence to "confront" him. (*Id.* at 180). After Emilio invited Poole to enter, Chavez greeted Poole in the living room. (*Id.* at 177). According to Chavez, Poole began "pointing fingers," calling him vulgar names, and accused him of being a "thief." (*Id.* 177-178). In response, Chavez "pulled a hundred dollar bill out of [his] pocket," "handed [Poole] the hundred dollar bill and he took it," and then he "crumpled it up and that's when it hit the floor." (*Id.* at 178). After Poole discarded the money, Chavez "got so sick of being called a thief" and other vulgar names that he decided to accompany Poole to Poole's residence to search for the missing money. (*Id.*).

-8-

{¶16} While Chavez was searching Poole's residence for the missing money, Poole "was on the phone with his younger son, Tommy." (*Id.* at 178-179). When Poole ended the phone call, he ordered Chavez out of his residence. (*Id.* at 179). Chavez testified that he complied with Poole's request and, as he was exiting the trailer, "a shot glass fl[ew] by the side of [his] head." (*Id.*). He testified, "[a]t that time [he] went straight out the door." (*Id.*). Chavez further testified that Bisbee "was still sitting outside" so Chavez "walked up to Mr. Bisbee's car and said, he told me to go the fuck home. He told me to tell you to go home. That we're all liars and thieves." (*Id.* at 180). According to Chavez, Bisbee witnessed that he "had no blood on [his] hands" and his "clothes weren't ripped." (*Id.*).

{¶17} Chavez returned to his residence; closed the front door (without locking it); and went to his room (where his girlfriend, Cassie Lawrence ("Lawrence"), and her daughter were) to go to bed. (*Id.* at 181). Chavez testified that he "woke up to [his front] door slamming against a table that sits right behind it." (*Id.* at 181-182). The noise also woke Lawrence and her daughter. (*Id.* at 182). Chavez said that he instructed Lawrence and her daughter to stay in the room, but Lawrence instead followed him to investigate the noise. (*Id.*). Chavez described that they "had sheets hanging at the end of the hallway to keep the heat in the living room * * *." (*Id.*). He also described that there were "no lights on in [the] house at this time" except for "the nightlight for the kitchen." (*Id.* at 182-183).

{¶18} Chavez testified that he "opened the sheet" and "observed Russell Poole coming straight at [him], screaming and yelling, and he had something in his hand." (*Id.* at 182). Chavez specifically described:

> He had something in his hand, and all I seen [sic] was a flash over. This guy just accused me of breaking into his house and taking his money and is highly intoxicated. You know, I didn't know. It's either fight or flight. Protect my family or run. And there's nowhere to run. So I told him, I screamed, get the fuck out of my house. He lunged like this. I don't know if he was just going to yell or what. But when he did this, I took it as a sign of aggression. I hit the man twice. He went back into the living room. * * * He comes back at me. I could see blood coming from his nose at this time. He went to swing at me again, or he went to go lunge at me again or grab me or whatever he was going to do. * * * [O]nce he tried to grab me, I grabbed him by his shirt, pushed him back and hit him two, maybe three more times.

(*Id.* at 183). Then, Chavez "ran him out the door" and tried to close the front door to keep Poole out; however, the two men continued to scuffle over the door until Chavez "heard [Poole] tumble * * * off the steps." (*Id.* at 184).

{¶19} According to Chavez, he did not report the incident to law enforcement because he did not want Poole to get into trouble. (*Id.* at 187). Moreover, Chavez testified that he was not contacted by law enforcement until more than a month after the incident when he reported to Deputy Callahan his version of events and that there were witnesses to the event. (*Id.* at 187-188). Chavez further testified that Deputy Callahan "didn't ask [him] to write a statement" or ask "who [the] witnesses were nor did he try to follow-up with any of [his] witnesses." (*Id.* at 188).

-10-

{¶20} On cross-examination, Chavez testified that Poole's front door was "in working condition" because he heard Poole lock it after he left Poole's residence from helping Poole search for the missing money. (*Id.* at 194). He clarified that the door was "never kicked in"; rather, it has "always been messed up, but it was able to be locked." (*Id.*). According to Chavez, he did not answer the door for law enforcement because they did not announce that it was law enforcement knocking on the door, and he was afraid that Poole was returning to continue the altercation. (*Id.* at 198).

{¶21} On re-direct examination, Chavez testified that he was not intoxicated on the night of the incident. (*Id.* at 217).

{¶22} Next, Chavez presented the testimony of Lawrence. (*Id.* at 218). Lawrence testified that she witnessed Poole at the residence "accusing [Chavez] of taking $61" and Chavez subsequently offering Poole "a hundred dollar bill." (*Id.* at 219). According to Lawrence, Poole "threw it on the floor and said, I don't want your fucking money." (*Id.*). She testified that Chavez then went with Poole to Poole's residence to search for the missing money. (*Id.*).

{¶23} Lawrence further testified that, "[l]ater that night when [they] were all in bed sleeping, [they] heard a bang" and she followed Chavez to the living room to investigate the noise. (*Id.* at 220). She testified that she

> ended up looking from the blanket they have hanging up in the
> hallway, was peaking, and [Chavez] told [Poole] to get the fuck out

of his house. And [Poole] lunge shot him. [Chavez] hit him two times
and told him to get * * * the fuck out of his house again. He wouldn't.
So [Chavez] hit him two more times. Threw him out the door, [Poole]
tried to come back in. And [Chavez] ended up slamming the door,
shut it and locked it.

(*Id.*). According to Lawrence, Poole "appeared to be really drunk" because "[h]e was stumbling, slurring his words." (*Id.* at 221). She testified that she was never contacted by law enforcement regarding the incident. (*Id.* at 221).

{¶24} On cross-examination, Lawrence testified that she saw Chavez punch Poole only four times. (*Id.* at 228). She testified that she heard "pounding on the door that night," but did not "hear the Seneca County Sheriff's Department come knock at the door," and did not know who was pounding on the door. (*Id.* at 228-229).

{¶25} As his final witness, Chavez presented the testimony of Emilio who testified that he encountered Poole when Poole came to the residence to accuse Chavez of stealing his money. (*Id.* at 235-236). Emilio testified that he asked Poole "how could he steal some money when he already, he got paid [that day]?" (*Id.* at 236). Then, according to Emilio, he left the room to go to bed because he did not want to argue with Poole. (*Id.*).

{¶26} Emilio testified that Poole "came a second time" when "he tried to get in" and Chavez confronted Poole. (*Id.*). He testified that he heard "arguing or something and [Chavez] pushed [Poole] out." (*Id.* at 237). And, he testified that he

-12-

saw only "a little bit when [Poole] went out the door when he tried to get back in. [Chavez] pushed him out. He might have hit him two or three times and that's it and he pushed him out." (*Id.*).

{¶27} On rebuttal, the State recalled Deputy Callahan, who testified that "it was very clear that it was the sheriff's office" knocking on Chavez's residence and that they "identified [themselves] as Deputy Callahan and Deputy Wheeler." (*Id.* at 239-240).

{¶28} The jury found Chavez guilty of felonious assault on January 18, 2019. (Case No. 18CR0145, Doc. No. 49). (*See also* Case No. 18CR0145, Doc. No. 50).

{¶29} At the final-revocation hearing in case numbers 16CR0210 and 16CR0211 on February 8, 2019, the trial court concluded that Chavez violated the terms of his community-control sanctions after Chavez admitted that he violated the terms of his community-control sanctions. (Case No. 16CR0210, Doc. No. 46); (Case No. 16CR0211, Doc. No. 47). (*See* Feb. 8, 2019 Tr. at 6). Accordingly, the trial court revoked Chavez's community control and sentenced Chavez to 11 months in prison in case number 16CR0210 and 11 months in prison in case number 16CR0211. (*Id.*); (*Id.*). The trial court ordered that Chavez serve the prison term imposed in case number 16CR0210 consecutive to the prison term imposed in case number 16CR0211. (*Id.*); (*Id.*).

{¶30} That same day (in case number 18CR0145), the trial court sentenced Chavez to four years in prison and ordered that Chavez serve that prison term consecutive to the consecutive-prison terms imposed in case numbers 16CR0210 and 16CR0211, for an aggregate sentence of four years and 22 months in prison. (Case No. 18CR0145, Doc. No. 55). The trial court filed its judgment entries of sentence on February 11, 2019.[3] (Case No. 16CR0210, Doc. No. 46); (Case No. 16CR0211, Doc. No. 47); (Case No. 18CR0145, Doc. No. 55).

{¶31} Chavez filed his notices of appeal on February 21, 2019 in case numbers 16CR0210, 16CR0211, 18CR0145, which were consolidated for purposes of appeal. (Case No. 16CR0210, Doc. No. 48); (Case No. 16CR0211, Doc. No. 50); (Case No. 18CR0145, Doc. No. 58). He raises five assignments of error for our review. We will begin by addressing Chavez's fourth and fifth assignments of error together, followed by his first, second, and third assignments of error.

<b>Assignment of Error No. IV</b>

**Appellant's conviction was not supported by legally sufficient evidence.**

<b>Assignment of Error No. V</b>

**Appellant's conviction was against the manifest weight of the evidence.**

---

[3] The trial court filed a nunc pro tunc judgment entry of sentence correcting a clerical error in case number 16CR0211 on February 20, 2019. (Case No. 16CR0211, Doc. No. 49).

{¶32} In his fourth and fifth assignments of error, Chavez argues that his felonious-assault conviction is based on insufficient evidence and is against the manifest weight of the evidence. On appeal, Chavez does not dispute that the State could prove the elements of felonious assault. Rather, Chavez contends that his felonious-assault conviction is based on insufficient evidence and against the manifest weight of the evidence because "the defense * * * produced legally sufficient evidence by a preponderance of the evidence (greater weight of the evidence) that [Chavez] acted lawfully in self-defense against a trespasser, with no duty to retreat, and thus, should have been found not guilty." (Appellant's Brief at 19).

*Standard of Review*

{¶33} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). As such, we address each legal concept individually.

{¶34} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly,

"[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶35} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard,

"[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Analysis*

**{¶36}** As an initial matter, Chavez's challenge to the sufficiency of the evidence as to self-defense is inappropriate. *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 10 ("Bagley's challenge to the sufficiency of the evidence as to self-defense is inappropriate."), citing *State v. Vasquez*, 10th Dist. Franklin No. 13AP-366, 2014-Ohio-224, ¶ 52. "Self-defense is an affirmative defense, and the accused bears the burden of proving it by a preponderance of the evidence."[4] *Id.* at ¶ 11, citing *State v. Belanger*, 190 Ohio App.3d 377, 2010-Ohio-5407, ¶ 4 (3d Dist.) and R.C. 2901.05(A) (2008) (current version at R.C. 2901.05(A) (2019)). "'The "due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime."'" *Id.*, quoting *Vasquez* at ¶ 52, quoting *State v. Hancock*,

---

[4] Subsequent to Chavez's trial, R.C. 2901.05 was amended to require the "the prosecution [to] prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be." R.C. 2901.05(B)(1) (Mar. 28, 2019). *See State v. Koch*, 2d Dist. Montgomery No. 28000, 2019-Ohio-4099, ¶ 103 (concluding that the defendant was "not entitled to retroactive application of the burden shifting changes by the legislature to Ohio's self-defense statute, R.C. 2901.05, as a result of H.B. 228"). *See also State v. Crowe*, 3d Dist. Allen No. 1-19-12, 2019-Ohio-3986, ¶ 15, fn. 1.

108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37. Therefore, we address Chavez's self-defense argument only in our analysis of the manifest weight of the evidence. *Id.*, citing *Vasquez* at ¶ 52.

{¶37} Chavez was convicted of felonious assault in violation of R.C. 2903.11(A)(1); however, he does not dispute that the State proved the elements of that offense. Rather, Chavez argues that the jury lost its way in concluding that he did not act in self-defense.

{¶38} "Affirmative defenses such as self-defense "'do not seek to negate any elements of the offense which the State is required to prove" but rather they "admit[] the facts claimed by the prosecution and then rel[y] on independent facts or circumstances which the defendant claims exempt him from liability.""" *State v. Oates*, 3d Dist. Hardin No. 6-12-19, 2013-Ohio-2609, ¶ 10, quoting *State v. Smith*, 3d Dist. Logan No. 8-12-05, 2013-Ohio-746, ¶ 32, quoting *State v. Martin*, 21 Ohio St.3d 91, 94 (1986).

{¶39} "The elements of self-defense differ depending on whether the defendant used deadly or non-deadly force to defend himself." *Bagley* at ¶ 15, citing *State v. Densmore*, 3d Dist. Henry No. 7-08-04, 2009-Ohio-6870, ¶ 25. "Deadly force is "'any force that carries a substantial risk that it will proximately result in the death of any person.""" *Id.*, quoting *Densmore* at ¶ 28, quoting R.C. 2901.01(A)(2) (2017) (current version at R.C. 2901.01(A)(2) (2019)). A

"substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8) (2017) (current version at R.C. 2901.01(A)(8) (2019)).

> To establish self-defense through the use of deadly force, an accused must prove: "(1) the accused was not at fault in creating the situation giving rise to the affray; (2) the accused had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that the only means of escape from such danger was in the use of force; and (3) the accused must not have violated any duty to retreat or to avoid the danger."

*Bagley* at ¶ 16, quoting *State v. Thacker*, 3d Dist. Marion No. 9-03-37, 2004-Ohio-1047, ¶ 14, citing *State v. Williford*, 49 Ohio St.3d 247, 249 (1990) and *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus.

{¶40} By contrast, to establish self-defense through the use of non-deadly force, an accused must prove: (1) the accused was not at fault in creating the situation giving rise to the affray, (2) the accused (even if mistaken) had a bona fide belief that he was in imminent danger of any bodily harm; and (3) the only means to protect himself from such danger was the use of force not likely to cause death or great bodily harm. *Accord State v. Vu*, 10th Dist. Franklin No. 09AP-606, 2010-Ohio-4019, ¶ 10; *State v. Juntunen*, 10th Dist. Franklin No. 09AP-1108, 2010-Ohio-5625, ¶ 21; *Ohio Jury Instructions*, CR Section 421.21 (Rev. Aug. 16, 2006). *See In re J.J.*, 5th Dist. Licking No. 16 CA 44, 2016-Ohio-8567, ¶ 14; *State v. Koch*, 2d Dist. Montgomery No. 28000, 2019-Ohio-4099, ¶ 62; *State. v. Jeffers*, 11th Dist.

Lake No. 2007-L-011, 2008-Ohio-1894, ¶ 81. *See also State v. Wagner*, 3d Dist. Seneca No. 13-15-18, 2015-Ohio-5183, ¶ 10. "In instances where less than deadly force is used, the defendant need only show a fear of bodily harm, not of death or great bodily harm." *State v. Brown*, 2d Dist. Montgomery No. 27312, 2017-Ohio-7424, ¶ 24, citing *State v. Gee*, 2d Dist. Miami No. 87-CA-22, 1987 WL 20260, *2 (Nov. 17, 1987) and *State v. Perez*, 72 Ohio App.3d 468, 472 (10th Dist.1991).

> Both versions of self-defense, however, use the term "great bodily harm": self-defense involving deadly force uses the term to describe the level of harm the defendant must perceive before he or she is justified in using deadly force, while self-defense with non-deadly force uses the term to describe the level of force a defendant may not apply.

*Juntunen* at ¶ 23. *See Jeffers* at ¶ 68. Likewise, there is *no* duty to retreat in cases involving non-deadly force. *Brown* at ¶ 25, citing *State v. Kucharski*, 2d Dist. Montgomery No. 20815, 2005-Ohio-6541, ¶ 21, citing *Perez* at 472. "'[I]f there is sufficient evidence on the issue of self-defense involving non-deadly force * * * the trial court must instruct the jury on that defense.'" *Jeffers* at ¶ 76, quoting *State v. Griffin*, 2d Dist. Montgomery No. 20681, 2005-Ohio-3698, ¶ 16, citing *State v. Ervin*, 75 Ohio App.3d 275, 279 (8th Dist.1991).

{¶41} Ohio's "castle doctrine" creates an exception to the duty to retreat and provides, in its relevant part, that "a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence." *Brown* at ¶ 25, citing R.C.

2901.09(B). The legislature extended the castle doctrine under R.C. 2901.05. *State v. Kean*, 10th Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 46, citing *State v. Carosiello*, 7th Dist. Columbiana No. 15 CO 0017, 2017-Ohio-8160, ¶ 17. R.C. 2901.05—the statutory presumption of self-defense—provides

> that a defendant is entitled to a presumption of self-defense if the evidence shows that the defendant used defensive force against another person who was "in the process of unlawfully and without privilege to do so entering, or ha[d] unlawfully and without privilege to do so entered" the defendant's residence.

*State v. Dale*, 2d Dist. Montgomery No. 2012 CA 20, 2013-Ohio-2229, ¶ 17, quoting R.C. 2901.05(B)(1) (2008) (current version at R.C. 2901.05(B)(2) (2019)). "This is a rebuttable presumption and may be rebutted by a preponderance of the evidence that the victim had a right to be in the residence or the defendant was unlawfully in the residence." *Id.*, citing *State v. Lewis*, 8th Dist. Cuyahoga No. 97211, 2012-Ohio-3684, ¶ 13, *State v. Barnette*, 12th Dist. Butler No. CA2012-05-099, 2013-Ohio-990, ¶ 57, and R.C. 2901.05(B)(2), (3) (2008) (current version at R.C. 2901.05(B)(3), (4) (2019)).

{¶42} "'The difference between the Castle Doctrine and the rebuttable presumption of self-defense lies in the legal status of the victim.'" *Id.* at ¶ 18, quoting *Lewis*, 2012-Ohio-3684, at ¶ 18. Specifically, if the victim is lawfully in a residence at the time the defendant used deadly force, that defendant is not entitled to the statutory presumption of self-defense. *Id.*, citing *Lewis* at ¶ 19 and R.C.

2901.05(B)(1), (2) (2008) (current version at R.C. 2901.05(B)(2), (3) (2019)). However, in those circumstances, the defendant is entitled to a castle-doctrine instruction—if that defendant is lawfully occupying the residence at the time he or she used the force. *State v. Whitman*, 5th Dist. Stark No. 2017CA00079, 2018-Ohio-2924, ¶ 57, citing *Lewis* at ¶ 17-19 and *State v. Bushner*, 9th Dist. Summit No. 26532, 2012-Ohio-5996, ¶ 16. When the castle doctrine applies, a "defendant need only establish the two remaining elements of a valid self-defense claim by a preponderance of the evidence * * * ." *Brown* at ¶ 25, citing *Dale* at ¶ 18 and *State v. Johnson*, 11th Dist. Lake No. 2005-L-03, 2006-Ohio-2380, ¶ 21.

{¶43} Because the elements of self-defense are cumulative, a defendant fails to demonstrate that he or she acted in self-defense if he fails to prove any one of the applicable elements by a preponderance of the evidence. *Bagley*, 2014-Ohio-1787, at ¶ 16, citing *Thacker*, 2004-Ohio-1047, at ¶ 14, citing *State v. Jackson*, 22 Ohio St.3d 281, 284 (1986).

{¶44} On appeal, Chavez contends that the evidence that he presented at trial that he acted in self-defense is weightier than the evidence presented by the State that he did not. In support of his argument that the weight of the evidence supports that he acted in self-defense, Chavez points to the inconsistencies of Poole's testimony regarding (1) the lack of blood evidence found in Poole's residence despite his testimony that a portion of the assault occurred in his residence; (2) the

timing of Poole's discovery that his front door had been "kicked in"; and (3) the amount of money that Poole alleged to be missing from his wallet. Chavez further alleges that Poole's version of events was not credible because Poole "was drinking alcohol earlier that day * * * ." (Appellant's Brief at 20). In contrast, Chavez contends that the weight of the evidence supports that he acted in self-defense because he presented the testimony of two eye-witnesses who supported his version of events. In sum, Chavez contends that his version of the incident is more credible than Poole's version.

{¶45} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671, ¶ 13, citing *DeHass* at paragraph one of the syllabus. "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984).

{¶46} Here, despite Poole's inconsistent testimony, the jury also observed Chavez's, Lawrence's, and Emilio's testimony "and we are mindful of the jury's 'superior first-hand perspective in judging the demeanor and credibility of witnesses.'" *State v. Suffel*, 3d Dist. Paulding No. 11-14-05, 2015-Ohio-222, ¶ 33,

quoting *State v. Phillips*, 10th Dist. Franklin No. 14AP-79, 2014-Ohio-5162, ¶ 125, citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. It is well within the province of the trier-of-fact to determine the credibility of Poole's, Chavez's, Lawrence's, and Emilio's testimony, including the prerogative to find Chavez's version of events (as supported by Lawrence's and Emilio's testimony) not to be truthful. *See State v. Voll*, 3d Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 27. Indeed, based on Lawrence's and Emilio's relationship with Chavez, the trier of fact was free to credit or discount Lawrence's or Emilio's testimony because the trier of fact is "patently in the best position to gauge the truth." *See State v. Smith*, 5th Dist. Licking No. 14 CA 83, 2015-Ohio-1610, ¶ 24 (concluding that the trier of fact was free to reject Smith's mother's alibi defense because the trier of fact is "patently in the best position to gauge the truth"), citing *State v. Durbin*, 5th Dist. Holmes No. 13 CA 2, 2013-Ohio-5147, ¶ 53. *See also State v. Mitchell*, 2d Dist. Montgomery No. 20372, 2005-Ohio-912, ¶ 24 (concluding that the trier of fact "was free to credit or discount" the alibi testimony of Mitchell's girlfriend based on their relationship). Likewise, the trier of fact was free to believe of disbelieve Poole's testimony or accept part of what Poole said and reject the rest. *See State v. Saxton*, 9th Dist. Lorain Nos. 02CA008029 and 02CA008030, 2003-Ohio-3158, ¶ 36, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

**{¶47}** Therefore, although Poole was inconsistent in his testimony, the jury weighed the inconsistences and found his version of events more credible than Chavez's version. *See Banks* at ¶ 16. Thus, based on the trier of fact's weighing the credibility of witnesses and the evidence presented at trial, we cannot say that it lost its way in finding that Chavez did not act in self-defense. *Id.* at ¶ 17. Accordingly, Chavez's felonious-assault conviction is not against the manifest weight of the evidence.

**{¶48}** Chavez's fourth and fifth assignments of error are overruled.

### Assignment of Error No. I

**The State of Ohio elicited testimony/evidence that improperly commented upon the Appellant's right to remain silent in violation of Appellant's legal rights, State and Federal Constitutional rights, and/or Due Process rights and thus, was denied a fair trial.**

**{¶49}** In his first assignment of error, Chavez argues that his right to remain silent was violated when the State improperly addressed Chavez's refusal to speak with law-enforcement officers during their investigation.

*Standard of Review*

**{¶50}** "The right to remain silent is conferred by the United States and the Ohio Constitutions." *State v. Graber*, 5th Dist. Stark No. 2002CA00014, 2003-Ohio-137, ¶ 78. "The privilege against self-incrimination 'is fulfilled only when the person is guaranteed the right "to remain silent unless he chooses to speak in the

unfettered exercise of his own will."'" *Id.*, quoting *Miranda v. Arizona*, 384 U.S. 436, 460, 86 S.Ct. 1602 (1966), quoting *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, (1964). *See also State v. Plott*, 3d Dist. Seneca No. 13-15-39, 2017-Ohio-38, ¶ 86, citing *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240 (1976). "This rule enforces one of the underlying policies of the Fifth Amendment, which is to avoid having the jury assume that a defendant's silence equates with guilt." *State v. Perez*, 3d Dist. Defiance No. 4-03-49, 2004-Ohio-4007, ¶ 10, citing *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, ¶ 30, citing *Murphy v. Waterfront Comm. of New York Harbor*, 378 U.S. 52, 55, 84 S.Ct. 1594 (1964). "However, the introduction of evidence regarding a defendant's decision to remain silent does not constitute reversible error if, based on the whole record, the evidence was harmless beyond any reasonable doubt." *State v. Zimmerman*, 18 Ohio St.3d 43, 45 (1985).

**{¶51}** Because Chavez did not object to any of the evidence of which he contends violated his right to remain silent, he waived all but plain error on appeal. *See State v. Perkins*, 3d Dist. Hancock No. 5-13-01, 2014-Ohio-752, ¶ 48; *Graber* at ¶ 126. "'Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."'" *State v. Harrison*, 3d Dist. Logan No. 8-14-16, 2015-Ohio-1419, ¶ 69, quoting *State v. Walburg*, 10th Dist. Franklin No. 10AP-1087, 2011-Ohio-4762, ¶ 47. "We recognize plain error with the utmost caution, under exceptional circumstances, and

only to prevent a manifest miscarriage of justice." *Id.*, citing *State v. Vielma*, 3d Dist. Paulding No. 11-11-03, 2012-Ohio-875, ¶ 34, citing *State v. Landrum*, 53 Ohio St.3d 107, 110 (1990). "'For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right.'" *Id.*, quoting *Vielma* at ¶ 34, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). *See also Perkins* at ¶ 48, citing *Barnes* at 27. "'Under the plain error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors.'" (Emphasis added.) *Harrison* at ¶ 69 quoting *Vielma* at ¶ 34, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996).

*Analysis*

{¶52} The use of a defendant's pre-arrest, pre-*Miranda* silence "as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination." *Leach* at syllabus. That is, using "a defendant's prior silence as substantive evidence of guilt actually lessens the prosecution's burden of proving each element of the crime and impairs the 'sense of fair play' underlying the privilege." *Id.* at ¶ 33.

{¶53} On appeal, Chavez alleges three instances in which he contends that his right to remain silent was violated. First, Chavez argues that the State violated his constitutional rights when the State elicited testimony from Deputy Callahan

stating that he "went to [Chavez's] residence and 'banged' on the door, yelled "[Chavez] we know you're in there, come on out, talk to us', but there was no response" and that "someone from inside [Chavez's] residence opened the blind a little, then closed and locked the door."  (Appellant's Brief at 12, quoting Jan. 17, 2019 Tr., Vol. I, at 129, 138-147, 150-155, 159-162).  Similarly, Chavez argues that the State improperly elicited testimony from Deputy Callahan that Chavez did not report to him anything about the incident—namely, that Poole "broke into" his residence, which resulted in him defending himself.  (Appellant's Brief at 13).

{¶54} Although introduced during the State's case-in-chief, this evidence does not violate Chavez's right to remain silent.  "[I]n limited circumstances, testimony of pre-arrest silence is appropriate if it is introduced as evidence of the 'course of the investigation.'"  *State v. Pence*, 12th Dist. Warren No. CA2012-05-045, 2013-Ohio-1388, ¶ 16, quoting *Leach* at ¶ 32.  Here, when reviewed in context, the State was eliciting testimony from Deputy Callahan for purposes of describing the course of his investigation.  *Compare id.* at ¶ 17 (concluding that law enforcement's "testimony regarding his phone call to [Pence] and [Pence's] failure to return the call may have been a 'legitimate' response to the state's questions about the investigation").  *See Graber*, 2003-Ohio-137, at ¶ 130 (concluding that the law enforcement officer's testimony that Graber did not want to speak with him at the time he was conducting its investigation did not amount to plain error).  Therefore,

because the evidence was not introduced as substantive evidence of Chavez's guilt, Chavez's right to remain silent is not implicated in these instances.

{¶55} Finally, Chavez contends that the State improperly asked him on cross-examination why he did not report the incident to law enforcement. Chavez's argument is specious. A defendant's pre-arrest, pre-*Miranda* silence may be introduced for impeachment purposes. *State v. Collins*, 7th Dist. Columbiana No. 10 CO 10, 2011-Ohio-6365, ¶ 17. *See Leach* at ¶ 21, citing *Jenkins v. Anderson*, 447 U.S. 231, 238, 240, 100 S.Ct. 2124 (1980). "[U]se of pre-arrest silence as impeachment evidence is permitted because it furthers the truth-seeking process. Otherwise, a criminal defendant would be provided an opportunity to perjure himself at trial, and the state would be powerless to correct the record." *Leach* at ¶ 33. Indeed, "'impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial.'" *Id.* at ¶ 22, quoting *Jenkins* at 238. Here, the State's questions of Chavez on cross-examination amount to impeachment evidence, which does not violate Chavez's right to remain silent. *See id.* at ¶ 21 (noting that "neither the Fifth Amendment right to be free from self-incrimination nor the Fourteenth Amendment right to due process is [sic] violated by the use of pre-arrest silence to impeach a criminal defendant's credibility"), citing *Jenkins* at 238, 240.

{¶56} Therefore, Chavez's first assignment of error is overruled.

**Assignment of Error No. II**

**Trial Counsel did not request, and the Trial Court did not provide, proper Jury Instructions and Verdict for regarding self-defense and, considering the recently amended self-defense law, Appellant was denied a fair trial.**

{¶57} In his second assignment of error, Chavez argues that the trial court erred by providing an incomplete and inaccurate self-defense jury instruction and verdict form to the jury. Similarly, Chavez argues in his second assignment of error that his trial counsel was ineffective for failing to request a self-defense jury instruction and verdict form that represent correct statements of law. Chavez also challenges the fairness of his trial as to the version of the self-defense law applied to his trial.

*Jury-Instruction Standard of Review*

{¶58} Generally, appellate courts review alleged errors in jury instructions for an abuse of discretion. *State v. Blanton*, 3d Dist. Seneca No. 9-15-07, 2015-Ohio-4620, ¶ 55, citing *State v. Guster*, 66 Ohio St.2d 266, 271 (1981). An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

{¶59} However, because Chavez did not object to the trial court's self-defense instruction to the jury, he waived all but plain error on appeal. *Harrison*, 2015-Ohio-1419, at ¶ 69; *State v. Wright*, 6th Dist. Lucas No. L-16-1053, 2017-Ohio-1225, ¶ 26. *See also State v. Robinson*, 8th Dist. Cuyahoga No. 102766, 2016-

Ohio-808, ¶ 9.  As we previously addressed, in order for there to be plain error, the error must have been an obvious defect in the proceeding and affected a substantial right.  *Harrison*, 2015-Ohio-1419, at ¶ 69, quoting *Vielma*, 2012-Ohio-875, at ¶ 34, *Barnes*, 94 Ohio St.3d at 27.  Under the plain-error standard, we will only reverse if, but for the trial court's errors, the outcome of the defendant's trial would clearly have been different.  *Id.*, quoting *Vielma* at ¶ 34, citing *Waddell*, 75 Ohio St.3d at 166.

*Jury-Instruction Analysis*

{¶60} At trial, the trial court instructed the jury on self-defense as follows:

Self-defense.  The defendant claims to have acted in self-defense.  To establish a claim of self-defense, the Defendant, Mr. Chavez, must prove by the greater weight of the evidence that:

(A)  he was not at fault in creating the situation giving rise to the serious physical harm to the victim; and

(B)  was in his residence.

Subsection (C) doesn't apply.

So Subsection (D).  This is the third part.  A person who lawfully is in his residence has no duty to retreat before using force in self-defense.

Residence means a dwelling in which a person resides either temporarily or permanently or is visiting as a guest.

Dwelling means a building of any kind that has a roof over it and that is designed to be occupied by people lodging in the building at night, regardless of whether the building is temporary or permanent or is mobile or immobile.

-31-

If you find that the State proved beyond a reasonable doubt all the essential elements of the offense of Felonious Assault, your verdict must be guilty.

If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of Felonious Assault, then your verdict must be not guilty.

(Jan. 18, 2019 Tr., Vol, II, at 276-278). The verdict form provided to the jury reflects a blank line for the insertion of "guilty" or "not guilty." That verdict form does not reflect any instruction or separate finding for self-defense. (*See* Doc. No. 49).

{¶61} We need not review whether the trial court committed any error in its instruction or verdict form because Chavez agreed to the trial court's jury instructions and verdict form. (*See* Jan. 18, 2019 Tr., Vol. II, at 248). "Under the invited-error doctrine, a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make." *State ex rel. Beaver v. Konteh*, 83 Ohio St.3d 519, 521 (1998). *See State v. Brown*, 5th Dist. Muskingum No. CT2013-0004, 2013-Ohio-3608, ¶ 53 ("In reviewing a claim on appeal that a jury instruction requested by the defendant and given by the trial court was reversible error, under the 'invited error doctrine,' a party may not request a jury instruction and then later complain on appeal that requested instruction was given."), citing *Walker v. State*, 5th Dist. Stark No. 2007CA00037, 2007-Ohio-5262, ¶ 51. Here, any error with the trial court's jury instruction on self-defense

and verdict form were invited by Chavez. *See State v. Dawson*, 8th Dist. Cuyahoga No. 104509, 2017-Ohio-965, ¶ 38 (concluding that, to the extent that any error occurred with the trial court's jury instructions on aggravated assault and self-defense, those errors were invited by Dawson); *Vu*, 2010-Ohio-4019, at ¶ 20 ("However, even if the trial court had erred by instructing the jury as it did, appellant could not complain because he invited the error by requesting the instruction."), citing *State v. Bey*, 85 Ohio St.3d 487, 493 (1999); *State v. Travis*, 9th Dist. Summit No. 22737, 2006-Ohio-1048, ¶ 9 (concluding that any error "regarding the jury instruction was invited error" because Travis "requested the jury instruction that was actually given"). Thus, Chavez cannot now take advantage of any error with the trial court's jury instructions or verdict form.

{¶62} Having concluded that Chavez cannot claim any error with respect to the trial court's jury instruction on self-defense, we next address Chavez's argument that his trial counsel was ineffective for requesting a defective jury instruction on self-defense and a defective verdict form.

*Ineffective-Assistance-of-Trial-Counsel Standard of Review*

{¶63} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668,

687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135 (1978). Generally, the failure to request a particular jury instruction or the failure to object to a trial court's jury instruction is a matter of trial strategy. *See State v. Huff*, 5th Dist. Stark No. 2006CA00081, 2007-Ohio-3360, ¶ 63; *State v. Byrd*, 10th Dist. Franklin No. 17AP-387, 2018-Ohio-1069, ¶ 54, citing *State v. Glenn-Coulverson*, 10th Dist. Franklin No. 16AP-265, 2017-Ohio-2671, ¶ 56, citing *State v. Morris*, 9th Dist. Summit No. 22089, 2005-Ohio-1136, ¶ 100.

{¶64} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Ineffective-Assistance-of-Trial-Counsel Analysis*

**{¶65}** In this case, Chavez contends that his trial counsel was ineffective for agreeing to a jury instruction that was not only a misstatement of law, but not in accordance with the Ohio Jury Instructions relating to self-defense. In particular, Chavez contends that the jury instruction on self-defense to which his trial counsel agreed was deficient because it failed to include the reasonable-belief language; the tests-for-reasonableness instruction; and the presumption-when-in-residence-or-vehicle instruction. *Ohio Jury Instructions*, CR Section 421.21 (Rev. Aug. 16, 2006); *Ohio Jury Instructions*, CR Section 421.23 (Rev. Aug. 16, 2006); *Ohio Jury Instructions*, CR Section 421.24 (Rev. Oct. 20, 2012). Likewise, Chavez contends that his trial counsel was ineffective for failing to request a verdict form that did not contain burden-shifting language or any self-defense finding.

**{¶66}** Ohio's jury instruction on deadly force provides, in its relevant part, as follows:

> 2. SELF DEFENSE. The defendant claims to have acted in self defense. To establish a claim of self defense, the defendant must prove by the greater weight of the evidence that

(A) he/she was not at fault in creating the situation giving rise to (*describe the event in which death or injury occurred*); and

(B) he/she had reasonable grounds to believe and an honest belief, even if mistaken, that he/she was in (imminent) (immediate) danger of death or great bodily harm, and that his/her only reasonable means of (retreat) (escape) (withdrawal) from such danger was by the use of deadly force; and

(C) he/she had not violated any duty to (retreat) (escape) (withdraw) to avoid the danger.

(Emphasis sic.) *Ohio Jury Instructions*, CR Section 421.19 (Rev. Oct. 11, 2008).

Likewise, Ohio's jury instruction on non-deadly force provides, in its relevant part,

as follows:

2. SELF-DEFENSE. The defendant claims to have acted in self-defense. To establish that he/she was justified in using force not likely to cause death or great bodily harm, the defendant must prove by the greater weight of the evidence that:

(A) he/she was not at fault in creating the situation giving rise to (*describe the event in which the use of non-deadly force occurred*); and

(B) he/she had reasonable grounds to believe and an honest belief, even if mistaken, that he/she was in (imminent) (immediate) danger of bodily harm.

(Emphasis sic.) *Ohio Jury Instructions*, CR Section 421.21 (Rev. Aug. 16, 2006).

{¶67} Because the jury instruction to which Chavez's trial counsel agreed

includes duty-to-retreat language, we must first determine whether it was error for

Chavez's trial counsel to not request a non-deadly-force instruction. In Ohio, "[a]

single punch, standing alone, may *not* constitute deadly force." (Emphasis added.)

*Jeffers*, 2008-Ohio-1894, at ¶ 81, citing *Perez*, 72 Ohio App.3d at 470-472. *See State v. Davis*, 10th Dist. Franklin No. 17AP-438, 2018-Ohio-58, ¶ 25, citing *State v. Triplett*, 192 Ohio App.3d 600, 2011-Ohio-816, ¶ 14 (8th Dist.), *State v. Mendoza,* 10th Dist. Franklin No. 16AP-893, 2017-Ohio-8977, ¶ 91-94, *Perez* at 470, *State v. Palmer*, 10th Dist. Franklin No. 12AP-460, 2013-Ohio-5970, ¶15, and *Struthers v. Williams*, 7th Dist. Mahoning No. 07 MA 55, 2008-Ohio-6637, ¶ 14-16. *See also In re J.J.*, 2016-Ohio-8567, at ¶ 14-16. "However, the act of delivering multiple punches, in succession, to another's head *may* rise to the level of deadly force." (Emphasis added.) *Jeffers* at ¶ 78, citing *State v. Watson*, 8th Dist. Cuyahoga No. 87281, 2006-Ohio-5738, ¶ 27. A situation presenting "a very close call as to whether [a defendant] used deadly or non-deadly force" raises a factual determination, which is within the purview of the jury. *Id.* at ¶ 78. *See id.* at ¶ 75 (noting that "the question of whether [the defendant] used deadly force was a factual determination within the purview of the jury"), citing *State v. Jackson*, 10th Dist. Franklin No. 00AP-444, *10 (Dec. 14, 2000) and *State v. Gee*, 2d Dist. Miami No. 87-CA-22, 1987 WL 20260, *5 (Nov. 17, 1987). Those factual determinations include (1) whether there "was a 'strong possibility, as contrasted with a remote or significant possibility,' that the force used by" a defendant would proximately result in the death of the victim; and (2) whether the force used by the defendant was likely to cause death or great bodily harm. *Id.* at ¶ 78. *See id.* at ¶ 77 (noting that "the

question for the jury was whether there was a 'strong possibility, as contrasted with a remote or significant possibility,' that the force used by [the defendant] would cause the death of [the victim]"), quoting R.C. 2901.01(A)(8) (2017) (current version at R.C. 2901.01(A)(8)).

{¶68} The facts and circumstances presented by this case presented a "very close call" as to whether Chavez used deadly or non-deadly force. *Accord id.* at ¶ 4, 78 (concluding that the defendant's act of punching the victim in the face, causing the victim to fall "onto the floor" and hit his head hard enough on the wall "to knock a hole in the drywall," followed by the defendant jumping on top of the victim and punching "him in the face or head seven to ten more times" "presented a very close call as to whether [the defendant] used deadly or nondeadly force"). Accordingly, it was for the jury to determine (1) whether there "was a 'strong possibility, as contrasted with a remote or significant possibility,' that the force used by" Chavez would proximately result in the death of Poole; and (2) whether the force used by Chavez was likely to cause death or great bodily harm. *Id.* at ¶ 78.

{¶69} However, Chavez was not prejudiced by any failure on the part of his trial counsel for failing to request that the jury consider whether Chavez acted with deadly or non-deadly force. That is, Chavez does not dispute that he is guilty of felonious assault in violation of R.C. 2903.11(A), which required the trier of fact to find that he knowingly caused Poole serious physical harm. *See id.* at ¶ 81, citing

R.C. 2903.11(A)(1). *See also State v. Cole*, 1st Dist. Hamilton No. C-950900, 1997 WL 22659, *10 (Jan. 22, 1997) (noting that "[a] claim of self-defense does nothing to negate any of the elements of the crimes charged"), citing *State v. Martin*, 21 Ohio St.3d 91, 93 (1986); *Dale*, 2013-Ohio-2229, at ¶ 27. Indeed, Chavez does not dispute that he punched Poole in the head and face four-to-five times, resulting in the loss of "several teeth * * * , stiches to his lip, use of a needle to remove blood from behind his eye (he still has vision in both eyes but with some issues), and migraine[ headaches] * * *." (Appellant's Brief at 8-10); (Jan. 17, 2019 Tr., Vol. I, at 183); (Jan. 18, 2019 Tr., Vol. II, at 252). Thus, for Chavez to succeed on a defense of self-defense through the use of non-deadly force, the trier of fact would have to find that he "'was justified in using force not likely to cause death or *great bodily harm*.'" (Emphasis added.) *Jeffers* at ¶ 81, quoting *Ohio Jury Instructions*, CR Section 411.33 (Rev. Aug. 16, 2006) (current version at *Ohio Jury Instructions*, CR Section 421.21 (Rev. Aug. 16, 2006)). Although the term "great bodily harm" is not statutorily defined, Ohio courts of appeal have concluded that the term is substantially similar to "serious physical harm," which is statutorily defined. *See In re J.J.*, 2016-Ohio-8567, at ¶ 15, citing *Juntunen*, 2010-Ohio-5625, at ¶ 22, *Jeffers* at ¶ 81, and *State v. Herrera*, 6th Dist. Ottawa No. OT-05-039, 2006-Ohio-3053, ¶ 53; R.C. 2901.01(A)(5) (2017) (current version at R.C. 2901.01(A)(5) (2019)). *See*

*also State v. Bennett*, 2d Dist. Montgomery No. 27943, 2019-Ohio-2996, ¶ 48, fn. 6 (Froelich, J., dissenting).

{¶70} Accordingly, if the jury were to find that the force used by Chavez was not likely to cause great bodily harm, that finding would be inconsistent with its prior determination that Chavez knowingly caused Poole serious physical harm. *See Jeffers* at ¶ 81; *Triplett* at ¶ 17, fn. 3 (Rocco, P.J., concurring in part and dissenting in part). Therefore, there is no reasonable probability that Chavez would have been able to prove that he acted in self-defense through the use of non-deadly force because he is unable to prove that he used force *not* likely to cause death or great bodily harm. *See In re J.J.* at ¶ 14-16 (concluding that a defendant fails to carry his burden of proving that he acted in self-defense through the use of non-deadly force if he caused the victim serious physical harm). *See also Mendoza*, 2017-Ohio-8977, at ¶ 91-94.

{¶71} Thus, we turn to whether the deadly-force instruction to which Chavez's trial counsel agreed is a correct statement of the pertinent law as is appropriate to the facts of this case. Here, Chavez contends that the jury instruction to which his trial counsel agreed lacks the reasonable-belief language; the statutory presumption of self-defense; and reasonableness test. First, based on our review of the jury instruction to which Chavez's trial counsel agreed, we agree that the instruction lacks the reasonable-belief element of "the basic" self-defense standard.

*See Williford*, 49 Ohio St.3d at 249. That is, there is no mention that the jury was to consider whether Chavez had reasonable grounds to believe, even if mistaken, that he was in imminent danger of death or great bodily harm and that the only means of escape from such danger was in the use of force. *See, e.g.*, *Bagley*, 2014-Ohio-1787, at ¶ 16. Accordingly, absent the reasonable-belief element, the jury instruction to which Chavez's trial counsel agreed is an incomplete statement of law. *See State v. McDuffie*, 8th Dist. Cuyahoga No. 100826, 2014-Ohio-4924, ¶ 14. *See also Dale* at ¶ 20, 27; *Lewis*, 2012-Ohio-3684, at ¶ 17, 19; *Kucharski*, 2005-Ohio-6541, at ¶ 21-22.

{¶72} Next, Chavez contends that his trial counsel was ineffective for failing to request that the trial court instruct the jury of the statutory presumption of self-defense. That is, Chavez argues that, although the jury instruction to which Chavez's trial counsel agreed properly instructed the jury that he had no duty to retreat while lawfully in his residence, his trial counsel failed to request that the trial court instruct the jury that Chavez was presumed to have acted in self-defense because Poole (under Chavez's version of the incident) *unlawfully* entered Chavez's residence. Moreover, Chavez argues that his trial counsel should have requested that the jury be instructed as to the statutory presumption or provided Ohio's jury instruction on the statutory presumption of self-defense. That instruction provides, in its relevant part, as follows:

2.    PRESUMPTION-DESCRIBED. The defendant is presumed to have acted in (self defense) * * * when using defensive force that was (intended) (likely) to cause death or great bodily harm to another if the person against whom the defensive force was used (was in the process of entering) (had entered), unlawfully and without privilege to do so, the (residence) * * * occupied by the defendant.

*Ohio Jury Instructions*, CR Section 421.24 (Rev. Oct. 20, 2012).

{¶73} We agree. *See Dale* at ¶ 27. There was conflicting evidence presented at trial as to whether Poole was lawfully in Chavez's residence at the time Chavez used the force. *Compare Williford* at 250 (concluding that a duty-to-retreat instruction was warranted because there was conflicting testimony as to whether Williford lured the victim to the porch before killing him, or whether Williford killed the victim in self-defense) *with State v. Nye*, 3d Dist. Seneca No. 13-13-05, 2013-Ohio-3783, ¶ 29 (concluding that Nye was not entitled to the statutory-presumption instruction because the evidence "did not establish that [the victim] was in the process of invading Nye's vehicle when Nye assaulted him") and *State v. Guice*, 10th Dist. Franklin No. 18AP-305, 2019-Ohio-1324, ¶ 40 (concluding that the statutory presumption did not apply because there was *no dispute* that the victim lawfully entered the defendant's premises). Specifically, Poole testified that Emilio invited him into the residence prior to the altercation, while Chavez testified that he awoke to Poole entering the residence without permission—a version which was bolstered by Lawrence's and Emilio's testimony. Therefore, based on that evidence, it was error to fail to request the statutory-presumption instruction or any

instruction as to the statutory presumption because it rendered the jury instructions incomplete. *Accord State v. Hadley*, 3d Dist. Marion No. 9-11-30, 2013-Ohio-1942, ¶ 95 (Rogers, J. dissenting) (concluding that the statutory presumption "applies with full force" in circumstances under which the victim or the defendant is unlawfully in the residence and "[w]ithout an instruction on the presumption there is not a complete or correct jury instruction"). *See Williford* at 251 ("The absence of a 'no retreat' instruction was erroneous because it rendered the jury instructions incomplete."); *Dale* at ¶ 27 ("An instruction on the castle doctrine could have established a critical element of Dale's self-defense claim, and there was no strategic basis to omit such an instruction."). *See also Whitman*, 2018-Ohio-2924, at ¶ 61, 63; *Hadley* at ¶ 42.

{¶74} Furthermore, Chavez contends that his trial counsel should have sought a jury instruction reflecting Ohio's jury instruction on the "test for reasonableness," which provides, in its relevant part, as follows:

> 1.   WORDS. Words alone do not justify the use of (deadly force) (force). Resort to such force is not justified by abusive language, verbal threats, or other words, no matter how provocative.
>
> 2.   TEST FOR REASONABLENESS.
>
> (A) SELF DEFENSE. In deciding whether the defendant had reasonable grounds to believe and an honest belief that he/she was in (imminent) (immediate) danger of (death or great bodily harm) (bodily harm), you must put yourself in the position of the defendant, with his/her characteristics, his/her knowledge or lack of knowledge, and under the circumstances and conditions that surrounded him/her

-43-

at the time. You must consider the conduct of (*insert name of assailant*) and decide whether his/her acts and words caused the defendant reasonably and honestly to believe that he/she was about to * * * (receive bodily harm).

(Emphasis sic.) *Ohio Jury Instructions*, CR Section 421.23 (Rev. Aug. 16, 2006).

{¶75} Although the Ohio Jury Instruction on the test for reasonableness would have likely aided the jury in determining the second element of a claim of self-defense through the use of deadly force (had that element been included in the trial court's jury instructions), its omission is not critical. "'"The instructions found in Ohio Jury Instructions are not mandatory. Rather, they are recommended instructions based primarily upon case law and statutes, crafted by eminent jurists to assist trial judges with correctly and efficiently charging the jury as to the law applicable to a particular case."'" *State v. Settle*, 11th Dist. Trumbull No. 2015-T-0119, 2017-Ohio-703, ¶ 25, quoting *State v. Shaffer*, 11th Dist. Trumbull No. 2001-T-0036, 2003-Ohio-6701, ¶ 44, quoting *State v. Martens*, 90 Ohio App.3d 338, 343 (11th Dist.1993), and citing *State v. Teachout*, 11th Dist. Lake No. 2006-L-081, 2007-Ohio-1642, ¶ 20, *State v. Morales*, 6th Dist. Lucas No. L-09-1119, 2010-Ohio-3061, ¶ 18, and *State v. Berry*, 159 Ohio App.3d 476, 2004-Ohio-6027, ¶ 22 (12th Dist.). *See also State v. Black*, 5th Dist. Stark No. 2011 CA 00175, 2012-Ohio-2874, ¶ 37 (noting that "deviation from the model instructions does not necessarily constitute error" because "strict compliance with the Ohio Jury Instructions is not mandatory"), citing *State v. Riggs*, 5th Dist. Licking No. 2010 CA 20, 2010-Ohio-

5697, ¶ 53. Generally, because Ohio Jury Instructions are authoritative—that is, not mandatory—it would be difficult to conclude that a defendant's trial counsel "failed to satisfy the requirements of a relevant professional norm by requesting it or failing to object when the court gave that instruction." *Kucharski*, 2005-Ohio-6541, at ¶ 25. Rather, the failure must be examined against the totality of the circumstances to determine whether the defendant was prejudiced as a result of his defense counsel's performance. *See id.* Therefore, whether Chavez's trial counsel's failure to request the inclusion of the Ohio Jury Instruction for the test for reasonableness requires reversal depends on the prejudice to Chavez.

{¶76} Finally, Chavez contends that his trial counsel's performance was deficient because the trial court's verdict forms omitted the "burden-shifting" language. In particular, Chavez contends that his trial counsel was ineffective for failing to object to the trial court's verdict form because it failed to include the Ohio Jury Instruction for an affirmative-defense-verdict instruction, which provides, in its relevant part:

> 1. GUILTY. If you find that the state proved beyond a reasonable doubt all the essential elements of the offense of [felonious assault] and that the defendant failed to prove by a preponderance of the evidence the defense of (self defense) * * *, your verdict must be guilty.
>
> 2. NOT GUILTY. If you find that the state failed to prove beyond a reasonable doubt any one of the essential elements of the offense of [felonious assault] or if you find that the defendant proved by a

> preponderance of the evidence the defense of (self defense) * * *, then you must find the defendant (not guilty) * * * .

*Ohio Jury Instructions*, CR Section 425.03.

{¶77} Here, as we previously discussed, the verdict form provided to the jury did not contain the burden-shifting language—namely, the affirmative-defense-verdict instruction provided by the Ohio Jury Instructions or a separate finding for self-defense. Instead, the verdict form reflected a blank line for the insertion of "guilty" or "not guilty." *Compare State v. Reeds*, 11th Dist. Lake No. 2007-L-120, 2008-Ohio-1781, ¶ 62 ("The verdict form used in this case did not contain a separate finding for self-defense, but rather had a finding for each charge and a blank for the insertion of 'guilty' or 'not guilty.'"). Indeed, "[s]elf-defense is not mentioned on the verdict form at all." *Id.* "While it may be argued that inclusion of a separate finding relating to self-defense would ensure clarity," the failure to request that the affirmative-defense-verdict instruction be included on a verdict form will not rise to error unless there is a reasonable probability that, but for defense counsel's failure, the result of the proceeding would have been different. *Id. See State v. Garvin*, 3d Dist. Hardin No. 6-94-6, 1994 WL 514049, *4-5 (Sept. 21, 1994) (suggesting it is error to fail to object to a verdict form that is missing the self-defense burden-shifting language). *See also Smith*, 2013-Ohio-746, at ¶ 33; *State v. Valentine*, 2d Dist. Montgomery No. 13192, 1992 WL 137101, *5 (June 19, 1992).

**{¶78}** Nevertheless, simply because we find error, those errors do not necessarily constitute reversible error. "To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different." *Dale*, 2013-Ohio-2229, at ¶ 26. *See also Smith* at ¶ 28. As we previously addressed, "'[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Bradley*, 42 Ohio St.3d at 142, quoting *Strickland*, 466 U.S. at 694. In this case, to determine whether there was a reasonable probability that, but for the errors of his trial counsel, the result of Chavez's trial would have been different, we must determine whether Chavez presented evidence from which the jury—had Chavez's trial counsel requested the proper jury instructions and verdict form—would have found that Chavez acted in self-defense. *Accord State v. Reid*, 1st Dist. Hamilton No. C-170697, 2019-Ohio-1542, ¶ 29.

**{¶79}** Notwithstanding Chavez's trial counsel's errors, we cannot say that there is a reasonable probability that, but for those errors, the result of Chavez's trial would have been different. *See Nye*, 2013-Ohio-3783, at ¶ 29-33 (concluding that there was no evidence presented at trial reflecting that the outcome of trial would have been different had the jury been instructed as to the statutory presumption);

*State v. Kean*, 10th Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 56 (noting that "Ohio courts have held a trial court's failure to give a castle doctrine instruction is not reversible error if there was evidence by which the jury could have found the presumption of self-defense was rebutted"), citing *Nye* at ¶ 30-32 and *Wright*, 2017-Ohio-1225, at ¶ 34. Although the facts of this case implicate the presumption of self-defense, "Ohio appellate courts, including this one, have stated that the presumption of self-defense may be rebutted by evidence showing the defendant's conduct in the affray did not meet the elements of self-defense." *Nye* at ¶ 30, citing *Hadley*, 2013-Ohio-1942, at ¶ 61 and *State v. Petrone*, 5th Dist. Stark No. 2011CA00067, 2012-Ohio-911, ¶ 73. Under the facts presented, the State presented sufficient evidence to rebut the presumption that Chavez acted in self-defense.

{¶80} In particular, referring back to the elements of self-defense, the State's evidence demonstrated that Chavez's conduct did not meet the elements of self-defense. *Id.* at ¶ 31. At trial, Poole testified that he believed that Chavez stole money from him. Under that belief, Poole went to Chavez's residence to confront him. After Emilio invited Poole into the residence—according to Poole—Chavez responded to Poole's accusation by throwing money on the floor and beating him in his face and head. That evidence demonstrates (at a minimum) that Chavez did not have a bona fide belief that he was in danger of imminent death or great bodily harm and that the only means of escape from such danger was in the use of force.

*Compare id.* at ¶ 32 (concluding that the evidence presented by the State "demonstrated that Nye did not have reasonable grounds to believe he was in imminent danger of death or great bodily harm and that his only reasonable response was the use of deadly force").  Because the evidence presented by the State reflects that Chavez did not have a bona fide belief that he was in danger of imminent death or great bodily harm and that the only means of escape from such danger was in the use of force—that is, the State presented evidence to rebut that element of Chavez's claim of self-defense through the use of deadly force—Chavez cannot show that there is a reasonable probability that, but for his trial counsel's errors, the outcome of his trial would have been different.  *See Bagley*, 2014-Ohio-1787, at ¶ 16, citing *Thacker*, 2004-Ohio-1047, at ¶ 14, citing *Jackson*, 22 Ohio St.3d at 284.

{¶81} Furthermore, that Poole and Chavez provided starkly different accounts of the assault does not change the outcome.  Namely, at trial Poole told the jury that Chavez assaulted him (beginning in Chavez's residence and ending in Poole's residence) in response to Poole's accusation that Chavez took money from Poole's wallet.  In contrast, Chavez told the jury that he assaulted Poole in response to Poole entering his residence without privilege (at night) and lunging at Chavez with something in his hand.  In other words, the outcome of the case hinged on whether the jury believed Poole's or Chavez's version of events.  Here, as we addressed in our manifest-weight-of-the-evidence analysis, the jury must have

found Poole to be more credible and believed his story over Chavez's story. Because matters of credibility are squarely within the province of the trier of fact, we cannot say, even if the jury had complete and accurate jury instructions and a more detailed verdict form, that the outcome of Chavez's trial would have been different. *See DeHass*, 10 Ohio St.2d at paragraph one of the syllabus. *See also State v. Christian*, 10th Dist. Franklin No. 93AP-688, 1993 WL 540240, *3 (Dec. 28, 1993) ("The jury was not required to believe defendant's version of the events."). Therefore, Chavez's ineffective-assistance-of-counsel claim fails.

{¶82} For these reasons, Chavez's second assignment of error is overruled.

### Assignment of Error No. III

**The cumulative effect of the improper admission of the above testimony/evidence regarding Appellant's right to remain silent and failure to provide proper Jury Instructions and Verdict form regarding self-defense unfairly prejudiced the Appellant and denied him a fair trial.**

{¶83} In his third assignment of error, Chavez argues that the cumulative effect of the trial court's errors denied him a fair trial. Specifically, Chavez argues that the cumulative effect of the errors that he alleged in his first and second assignments of error deprived him of a fair trial.

*Standard of Review*

{¶84} "Under [the] doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair

-50-

trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Spencer*, 3d Dist. Marion No. 9-13-50, 2015-Ohio-52, citing *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 222-224 and *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). "To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors." *State v. Stober*, 3d Dist. Putnam No. 12-13-13, 2014-Ohio-5629, ¶ 15, quoting *In re J.M.*, 3d. Dist. Putnam No. 12-11-06, 2012-Ohio-1467, ¶ 36.

### Analysis

{¶85} Because we found no error as alleged by Chavez in his first, second, fourth, or fifth assignments of error, the doctrine of cumulative error does not apply. *State v. Bertuzzi*, 3d Dist. Marion No. 9-13-12, 2014-Ohio-5093, ¶ 110.

{¶86} Chavez's third assignment of error is overruled.

{¶87} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**